1       UNITED STATES DISTRICT COURT
        EASTERN DISTRICT OF NEW YORK

2   ------------------------------

3   EAST END ERUV ASSOCIATION, INC.      Docket 11-cv-00213-AKT
      et al,

4                         *Plaintiff,*   United States Courthouse
                                         Central Islip, New York

5                  v.
                                         April 12, 2013
6   The Village of Westhampton Beach     3:17-55 pm - 4:40:57 pm
      et al,

7                         *Defendant.*
    ------------------------------

8               TRANSCRIPT FOR CIVIL CAUSE
                  - STATUS CONFERENCE -
9         BEFORE THE HONORABLE A. KATHLEEN TOMLINSON
               UNITED STATES MAGISTRATE-JUDGE
10

11  A P P E A R A N C E S :

12  *For Plaintiff, East End*    ROBERT G. SUGARMAN, ESQ.
    *Eruv Association:*          YEHUDAH L. BUCHWEITZ, ESQ.
13                               SABRINA A. PERELMAN, ESQ.
                                 Weil, Gotshal & Manges, LLP
14                               767 Fifth Avenue
                                 New York, New York 10153
15                               (212) 310-8184; (212) 310-8007 fax
                                 robert.sugarman@weil.com
16

17  *For Interested Party,*      ERICA WEISGERBER, ESQ.
    *Verizon:*                   Debevoise & Plimpton LLP
18                               919 Third Avenue
                                 New York, New York 10022
19                               (212) 909-6998; (212) 521-7490 fax
                                 eweisgerber@debevoise.com
20

21  *For Interested Party,*      MICHELE A. PINCUS, ESQ.
22  *Long Island Lighting*       General Counsel at LIPA
    *Company:*                   333 Earle Ovington Blvd
23                               Uniondale, NY 11553
                                 (516) 719-9884; (516) 719-9812 fax
24                               mpincus@lipower.org

25

```
1   A P P E A R A N C E S :

2   For Defendant, Village        BRIAN S. SOKOLOFF, ESQ.
       of Westhampton Beach:      LEO DORFMAN, ESQ.
3                                 Sokoloff Stern LLP
                                  179 Westbury Avenue
4                                 Carle Place, NY 11514
                                  (516) 334-4500; (516) 334-4501 fax
5                                 bsokoloff@sokoloffstern.com

6

       For Defendant, Village     JELTJE DEJONG, ESQ.
7        of Quogue:               JOSHUA S SHTEIERMAN, ESQ.
                                  Devitt Spellman Barrett, LLP
8                                 50 Route 111
                                  Smithtown, NY 11787
9                                 (631) 724-8833; (631) 724-8010 fax
                                  J.dejong@devittspellmanlaw.com
10

11

       Transcriber:               AAA ELECTRONIC SOUND REPORTERS
12                                1133 Broadway, Suite 706
                                  New York, New York 10010
13                                888-866-5135; 888-677-6131 fax
                                  electronicsound@court-transcripts.net
14

15         (Proceedings recorded by electronic sound recording)

16

17

18

19

20

21

22

23

24

25
```

East End Eruv v. Village of Westhampton Beach - 4/12/13        3

1      COURTROOM DEPUTY:  Calling 11-cv-213, East End Eruv
2  Association v. Village of Westhampton Beach and 11-cv-252,
3  Verizon v. Village of Westhampton Beach, et al.  Please state
4  your appearance for the record.
5      MR. SUGARMAN:  Your Honor, Robert Sugarman, Weil
6  Gotshal and Manges, together with Yehudah Buchweitz and Sabrina
7  Perelman for the East End Eruv Association.
8      THE COURT:  Good afternoon.
9      MR. SUGARMAN:  Good afternoon.
10      MS. WEISGERBER:  Erica Weisgerber from Debevoise &
11  Plimpton for Verizon New York.
12      THE COURT:  Good afternoon.
13      MS. PINCUS:  Michelle Pincus from the Long Island
14  Power Authority, Associate General Counsel, in-house.
15      THE COURT:  Good afternoon.
16      MR. SOKOLOFF:  Brian Sokoloff, Sokoloff Stern LLP for
17  the Village of Westhampton Beach.
18      THE COURT:  Good afternoon.
19      MR. DORFMAN:  And Leo Dorfman from Sokoloff Stern LLP
20  also for the Village of Westhampton Beach, Your Honor.
21      Good afternoon.
22      THE COURT:  Good afternoon.
23      MS. DEJONG:  Jeltje DeJong for the Village of Quogue,
24  defendant.
25      Good afternoon, Judge.

East End Eruv v. Village of Westhampton Beach - 4/12/13       4

1          THE COURT:  Good afternoon.

2          MR. SHTEIERMAN:  Joshua Stheierman from Devitt

3   Spellman Barrett for the Village of Quogue.  Good afternoon,

4   Your Honor.

5          THE COURT:  All right.  Maureen Liccione, am I

6   missing?

7          MR. BUCHWEITZ:  They are no longer -- at this time,

8   they're not part of this case.

9          UNIDENTIFIED SPEAKER:  Well, they're -- I'm sorry.

10          MS. WEISGERBER:  Well, they're -- I'm sorry.  They're

11   part of the Verizon --

12          THE COURT:  You need to move the mic over, because we

13   need to get you on the record.

14          MS. WEISGERBER:  They're still part of the Verizon

15   LIPA case.

16          THE COURT:  Okay.

17          MS. WEISGERBER:  But the case against Southampton was

18   stayed.

19          THE COURT:  Okay.  All right.  Well, I was this close

20   to putting money on the fact that Judge Wexler was never going

21   to sign the consent in this case.  So, now my life is forever

22   changed.  So we'll see where we're going here.

23          Ms. DeJong, I know that you have to leave for a

24   conference, so let me -- there are two things I want to address

25   and then I am going to open the floor and we'll address whatever

East End Eruv v. Village of Westhampton Beach - 4/12/13          5

1   else needs to be addressed today.

2          Now there are a couple of pending motions, two of

3   which I would like to dispose of today if we can and I want to

4   go over the first one that deals with the issues concerning

5   electronically stored information and what was and wasn't served

6   on time and the request to extend discovery beyond the deadline,

7   et cetera, et cetera.

8          You obviously at this point now since I don't have the

9   -- not that I am not going to make some firm dates but I am not

10  in the position to impose the same schedule on you that Judge

11  Wexler was imposing.  So, my question first of all is can we

12  dispose of this motion virtually by giving some additional time

13  and setting some deadlines here?

14         MS. DEJONG:  Your Honor, I believe that we can.  Our

15  -- I think that we'll be able to produce all of the remaining

16  electronic documents on Monday.  We got the disk from our

17  vendor.  We just need to review it and I think that that will

18  take care of all of the Village of Quogue's ESI document

19  production.

20         THE COURT:  All right.

21         MS. DEJONG:  But, Your Honor, we haven't been able --

22  well, that takes care of our production.

23         THE COURT:  All right.  And let's just -- let me get

24  the right papers here, hang on for a second.

25         MR. BUCHWEITZ:  And, Your Honor, there were two

East End Eruv v. Village of Westhampton Beach - 4/12/13        6

1   aspects of it; one was also asking them to produce their

2   witnesses before the close of discovery and subsequent to that,

3   Quogue did agree to produce their witnesses in April.

4          THE COURT:  All right.  That's still on?  You're going

5   to be able to do that?

6          MR. SOKOLOFF:  I have -- do you want me to stand up

7   or --

8          THE COURT:  I don't know.  Are you in the practice now

9   with Ms. DeJong?  I'm just checking.

10          MS. DEJONG:  Your Honor, we would be able to produce

11   our witnesses for April.  However, the deposition schedule seems

12   to be -- we're having difficulty with regard to the depositions

13   of the plaintiffs in that we're still reviewing the multitude of

14   documents that we have received from them.  We're in the process

15   of culling through ours and now we have thousands -- we have

16   10,000 pages from EEEA, over 7,500 pages from Verizon and 23,000

17   pages from LIPA that we haven't had the opportunity to review.

18          We started reviewing EEEA's electronic response and we

19   found that there were e-mails that were redacted, so now we have

20   a privilege issue that we also have to discuss today.  So all of

21   the depositions are contingent upon the document production.

22          THE COURT:  Okay.  So this is a bench trial, I

23   understand now, which means I have to go take speed reading

24   courses because trial's going to be very interesting, I gather;

25   correct?

1          MR. BUCHWEITZ:  Yes, it's going to be very

2    interesting.  Your Honor on what was just discussed, you know,

3    the schedule that we have as I am sure you saw from the various

4    letters has at a few different points dropped and the last time

5    I was before you I told you how important it was to our clients

6    to not lose yet another summer, which is why we were so happy

7    that we had the June 5 pretrial conference.  And at every point

8    of the way, this case when any of the parties have asked for an

9    extension, I've said we'll extend it but we're not moving the

10   end date.  We're not moving the end date.  We're not moving the

11   end date.

12          And now the documents were produced, most -- many of

13   our documents were produced in January.  The rest were produced

14   by the date that everyone agreed -- everyone else agreed for

15   substantial production was March 1st.  And we noticed all our

16   depositions within a week of that.  They didn't notice any.  I

17   still gave them dates for all of our plaintiffs without them

18   even noticing anybody and we gave them dates that worked for us

19   and they agreed to dates and we have a schedule for all the

20   depositions, even though some of the depositions go beyond the

21   current end of discovery to April 30th into -- a couple of weeks

22   into May.

23          So, you know, I don't see any reason why we need to

24   push these things off.  These documents -- these people have had

25   these documents.  This is the schedule we know that we've had.

East End Eruv v. Village of Westhampton Beach - 4/12/13        8

1   The initial schedule was longer.  Everyone wanted -- the other

2   people wanted more time.  I said the same thing; you can have it

3   but we're not moving the end date and it's very important to our

4   clients to not go yet another summer without an Eruv.

5             THE COURT:  All right.  Are you prepared to go ahead

6   and take the defendant's depositions even though you're not

7   getting this electronic discovery batch until Monday?

8             MR. BUCHWEITZ:  Yes.

9             THE COURT:  Okay.  I have a problem putting your

10  clients up for depositions and the agreed upon dates?

11            MS. DEJONG:  Your Honor, I don't.  However, I would

12  like to ask that -- there's currently also now before Your Honor

13  a -- motions with regard to -- well the issue was whether or not

14  the utilities had the authority to put up attachment to their

15  poles and I believe that if that matter is resolved, if it's

16  resolved in the defendant's favor then there will be no need to

17  do depositions of anybody because if they don't have the

18  authority, then this case is over in my opinion.

19            So I was hoping that Your Honor would first look at

20  that and make a determination.  I know when we were front of

21  Judge Wexler, he stated -- he asked that we put in findings of

22  fact and conclusions of law.

23            THE COURT:  Yes.

24            MS. DEJONG:  And he also said that maybe the findings

25  of fact won't be enough and maybe we'll still have to have a

East End Eruv v. Village of Westhampton Beach - 4/12/13          9

1   hearing on this issue but -- so we -- all the parties to the

2   utilities case submitted findings of fact and conclusions of

3   law.  I don't know if Your Honor will require a hearing after

4   you've reviewed the documents but in any event, I was hoping

5   that perhaps we could deal with that first before we spend time

6   and energy on depositions.

7              THE COURT:  Not to mention expense.  I get it.  What's

8   your position on that?

9              MR. BUCHWEITZ:  Our position on it is -- well, that

10  was stipulated facts.  So there are no factual questions.  Both

11  sides to that -- those submissions which we are not part of

12  agreed on the facts; stipulated facts, just different

13  conclusions of law.

14             We don't think there's any reason to not proceed.

15  Judge Wexler, in fact, said at the same hearing that they're

16  talking about that we should go ahead with our discovery and

17  proceed and he didn't care and he was going to have a trial

18  before June 1st.  And that's how we've been proceeding.

19             Frankly, I don't think that there's really any

20  question that the utilities have authority and I think that it's

21  going to be easy for you to conclude that and I think that, you

22  know, as the papers we --

23             THE COURT:  That's a great relief to me.  Thank you.

24             MR. BUCHWEITZ:  And as the papers that we put in show,

25  you know, there are as -- I told you the last time I was here

East End Eruv v. Village of Westhampton Beach - 4/12/13    10

1  last summer, you know, there dozens of Eruvin throughout New

2  York, virtually -- dozens of them rely on contracts with Verizon

3  and LIPA and no one's ever come up with this argument before.

4          THE COURT:  All right.  Well, I'm going to be very

5  candid with you.  I have not looked at that motion.  I certainly

6  will and I will look at it in the short term but I am sure that

7  you two are the not the only ones who are impacted by this.  So

8  anybody else who wants to put their two cents in --

9          MR. SOKOLOFF:  Yes, I would.

10          THE COURT:  -- I didn't mean to cut you off before,

11  Mr. Sokoloff.

12          MR. SOKOLOFF:  There is a very comprehensive agreed

13  upon stipulation of facts between the villages and the

14  utilities.  The only issue remaining for the Court is looking at

15  those facts, what does the law say about the situation.

16          Fortunately, Mr. Buchweitz is not the Judge, he is not

17  the Court; of course, he doesn't think there's any merit to our

18  position but we think that there's merit and if the Court

19  ultimately finds our way on the law, not requiring any further

20  factual development, that's the end of the issue because if the

21  utilities can't sublicense their poles to a religious

22  institution to put these things on public property, the case is

23  over.

24          And basically what Judge Wexler did is he bifurcated

25  the issues.  There's the federal issue, the establishment clause

East End Eruv v. Village of Westhampton Beach - 4/12/13      11

1    claim and then there's the state law issue.  If either one goes

2    in favor of the Villages, there's no case.  And so it seems the

3    federal rules, I think it's Rule 1, say that they should be

4    construed to allow for the just, speedy and inexpensive

5    resolution of disputes.

6          It would seem to be if there's a dispositive issue,

7    already teed up on the table, there's no reason to have the

8    plaintiffs to add to their claim of -- they told us in

9    interrogatory responses their attorneys fees thus far are $4.6

10   million.  Well, there's no reason to keep the meter running when

11   the Court has everything it needs to decide a dispositive issue.

12   And so I heartily join in Ms. DeJong's request.

13         We're in the middle of document production and, you

14   know, if I said we should have no discovery, everybody would go

15   crazy.  So I think the halfway point is we'll continue

16   exchanging documents but let's hold off on the depositions.

17         MR. SUGARMAN:  Your Honor, as Mr. Buchweitz said,

18   every day, every weekend that passes is a violation of the

19   plaintiff's constitutional rights in our view.  This case has

20   been pending for two and a half years.  Westhampton Beach

21   literally on the eve of Verizon's issuing the go ahead to put

22   these lechis on the poles, came up with this you don't have

23   authority theory, a year and a half into the case they came up

24   with that.  Six months of back and forth e-mails between counsel

25   for Verizon, counsel for the EEEA, counsel for Westhampton Beach

East End Eruv v. Village of Westhampton Beach - 4/12/13     12

1   and finally, literally the night before the lechis were going to

2   go up, the authority issue was raised.

3            This case has been marked by one delay after another

4   delay after another delay and we are now two and a half years

5   later, without an Eruv.  As Mr. Buchweitz said, Judge Wexler was

6   going to decide the authority issue but he did not back off at

7   all from the date that he wanted to try this case and the

8   discovery that had to proceed.

9            So, I frankly beseech Your Honor to leave the schedule

10  in place.  I'm not going to opine on what you're going to do

11  with the motion.  I happen to agree with Mr. Buchweitz.  I'm

12  sure Ms. Weisgerber and Ms. Pincus do as well; you'll decide

13  that.

14           But to slow up at this point is yet another delay of

15  further violation of plaintiff's rights and we beseech Your

16  Honor to let the schedule proceed.

17           THE COURT:  All right.  Look, two things; one is you

18  folks have had a lot of back and forth and motion practice and

19  appearances before Judge Wexler and I appreciate that and I know

20  that the case has been going on for two and a half years.

21           For my purposes, you know, I've had the case for all

22  purposes now for about two and a half minutes and so in

23  fairness, especially when the issues here are so important, I

24  need a little bit of time to look at these papers and make some

25  determination.  And frankly, because the production is still

East End Eruv v. Village of Westhampton Beach - 4/12/13      13

1    going on and I'm gathering the production itself since you're

2    ready to take depositions, has little impact if any on what's

3    been submitted already that I need to look at and so I'll take

4    that into account.

5         But I think that one of the issues that I have to pay

6    attention to here, especially given the length of the litigation

7    up to this point is the cost involved here to everybody.

8    Certainly, you know, I am dealing with municipalities.  I have

9    some concerns that I have to balance here; your clients,

10   individual constitutional rights, their responsibilities to the

11   rest of the public whose paying the bills for their defending

12   this litigation.

13        And so, I am going to take a look at this and I am

14   going to take a look at it very quickly to give you some idea.

15   For now, until I have an opportunity to do that, I'm not going

16   to allow the depositions to go forward.  Now that doesn't mean

17   that I won't give you an okay to let them get started but I need

18   a few days, at least, probably closer to a week, to get myself

19   in a position where I can comment more knowingly certainly on

20   what you're proposing here today.

21        So I'm going to take that time because I think I -- in

22   fairness to everybody, I'm obligated to do that.

23        MR. SUGARMAN:  Your Honor, as you do that, all I would

24   say in addition is there are three issues that are really the

25   guts of this case; the first is the authority issue --

East End Eruv v. Village of Westhampton Beach - 4/12/13    14

1          THE COURT:  Yes.

2          MR. SUGARMAN:  -- we've talked about that.  The second

3   is whether these lechis and I've got a picture of one which I

4   can hand up, they're five-eighths inch round --

5          THE COURT:  Yes.

6          MR. SUGARMAN:  -- plastic strips --

7          THE COURT:  Yes.

8          MR. SUGARMAN:  -- whether those lechis violate the

9   Quogue sign law.  That's issue number two.  And issue number

10  three is whether there's any establishment clause violation.  If

11  the utilities have authority, there are no further issues with

12  respect to Westhampton Beach because Westhampton Beach does not

13  have a sign law, as Mr. Sokoloff pointed out a year ago when he

14  was before Your Honor.  So there's no establishment clause issue

15  because there's nothing for Westhampton Beach to do.

16  Westhampton Beach, in Mr. Sokoloff's words is over if that

17  happens.

18          With respect to Quogue, if the lechis don't violate

19  the sign law, there is as well no establishment clause violation

20  because Quogue is not being asked to do anything.  So, the

21  establishment clause goes away except with respect to LIPA and

22  the papers that were submitted to you, I submit, make clear that

23  there's no violation of the establishment clause if LIPA has the

24  authority and issues a license.

25          So while all of these lawyers are basically telling

East End Eruv v. Village of Westhampton Beach - 4/12/13    15

1   you how complicated this case is, it's not very complicated.  It

2   comes down to these three issues and as you consider how you're

3   going to go forward with this case, I would ask you to consider

4   that.

5        And the other thing, you indicated that this would be

6   a bench trial; it is going to be a bench trial.  Westhampton

7   Beach did have a jury demand.  The plaintiffs are waiving its --

8   their damages claims.  So it's totally equitable and therefore

9   there's no need for a jury.  We will stipulate to all of that.

10  That will also cut down on the discovery.  And that is all I

11  would ask you to consider.

12       And then -- and consider setting a trial date as

13  quickly as Your Honor's schedule permits so that we don't lose

14  another summer.

15       THE COURT:  Understood.

16       MR. SOKOLOFF:  I just need to respond to that, please.

17  I did not say that if the Court finds that the utilities have

18  the authority to allow the lechis, that's the end of the case.

19  No, if it's found that the utilities are permitted to sub-

20  license their poles, then the next issue is whether it violates

21  the establishment clause to have a religious symbol on public

22  property.  All of these poles are located on public property.

23       The second thing is with regard to losing another

24  summer, there has been correspondence in the case and evidence

25  in the case that there have been Eruvs in Westhampton Beach and

1   nothing prevents private individuals from putting up an Eruv,

2   constructing an Eruv as long as the religious symbols remain on

3   private property; that's number one.

4           But number two, the plaintiffs made the exact argument

5   that we need to do it right now because every day our

6   constitutional rights are being violated.  They did that

7   initially when they filed the case.  They moved for a

8   preliminary injunction.  Judge Wexler had a multi-day hearing on

9   the preliminary injunction and the preliminary injunction was

10  denied.  And so, I just want the Court to be aware of what's

11  also on the docket sheet.

12          THE COURT:  All right.  Let me ask this question, is

13  -- and again, I have not looked at this in detail but in terms

14  of what's -- anything that's been posted so far on ECF, is the

15  list of agreed upon deposition dates up there anywhere?

16          MR. SUGARMAN:  No.

17          THE COURT:  All right.  Does somebody have that?

18          MR. DORFMAN:  I do, Your Honor.

19          THE COURT:  Could I get a copy of that before you

20  leave here today?

21          MR. DORFMAN:  Of course, Your Honor.

22          THE COURT:  All right.  And Erin, maybe you can make a

23  copy and you can give that back to him.  All right?  I would

24  like to look at that as part of my consideration, as well.

25          MR. DORFMAN:  Yes, just let me look at it.

East End Eruv v. Village of Westhampton Beach - 4/12/13    17

1        THE COURT:  All right.  One other issue

2        MR. SUGARMAN:  May I just --

3        THE COURT:  Go ahead.

4        MR. SUGARMAN:  -- respond to what Mr. Sokoloff just

5   said?  First of all, the Eruv that's being requested cannot be

6   created on private property.  It just can't.  And secondly, when

7   we were before Judge Wexler after the preliminary injunction

8   hearing and Mr. Sokoloff said there's no local law, Judge Wexler

9   said then to me, then put up the Eruv.  Put up the lechis in the

10  Westhampton Beach.  Go ahead and do it.

11       The problem with that was that the municipalities had

12  threatened Verizon and LIPA with fines and Verizon and LIPA

13  would not go along.  But so the notion that there's much more to

14  this in terms of the establishment clause if the authorities

15  have -- the utilities have the authority, is not a valid

16  argument.

17       THE COURT:  My other question is in terms of the

18  appearances that you all had with Judge Wexler, have transcripts

19  been ordered for all of those?  Are the transcripts up on ECF?

20       MR. BUCHWEITZ:  They've been ordered.  They're not ECF

21  but we could submit them to you.

22       THE COURT:  I would appreciate that.

23       MR. BUCHWEITZ:  We'll do that.

24       THE COURT:  Like sooner rather than later.

25       MR. SOKOLOFF:  Can I ask that when you submit them to

East End Eruv v. Village of Westhampton Beach - 4/12/13     18

1  the Court, that you copy me as well?

2              MR. BUCHWEITZ:  Absolutely, Brian.

3              THE COURT:  All right.  So, the faster you can get

4  them to me, I would like to take a look at those as well.

5              MR. BUCHWEITZ:  Well, it will be today.

6              THE COURT:  That's fine.  A couple of days are fine.

7              MR. BUCHWEITZ:  It will be sooner than that.

8              THE COURT:  All right.  One other matter I did want to

9  address today was this motion to quash the subpoenas served on -

10 - let me just get the names right here --

11             MR. SUGARMAN:  Your Honor, the lawyer who made that

12 motion is not present.

13             THE COURT:  All right.  Well, then I likely won't rule

14 but I would like to get some other information.

15             MR. SUGARMAN:  Okay.

16             THE COURT:  And let me address it to the opposition at

17 -- that you put in here, Mr. Sugarman.  You know what?  Hold on

18 for a second.

19             (Pause)

20             MR. DORFMAN:  Judge, I want to apologize for the state

21 of the list that you just received.  I did not prepare that for

22 the Court originally.  And also, I --

23             THE COURT:  I've seen worse; don't worry about it.

24 Okay?

25             MR. DORFMAN:  Also, I wanted to just mention that we

East End Eruv v. Village of Westhampton Beach - 4/12/13    19

1  put that together and agreed on it before a lot of the issues

2  with the documents that I am sure you're going to hear about in

3  a few minutes, before a lot of those issues came up.  And while

4  April 30th was the deadline for discovery and we were really

5  crunched for time, and so that's what I would call kind of an

6  aspirational and pretty aggressive deposition schedule that now

7  because of some of the discovery issues coming up, I think is

8  going to be tough to stick with.

9          THE COURT:  All right.  Well, we'll talk more about

10 this.

11         (Pause)

12         (Mr. Sinnreich joins the conference telephonically.)

13         THE COURT:  Mr. Sinnreich?

14         MR. SINNREICH:  Yes, ma'am.

15         THE COURT:  Hi, this is Judge Tomlinson.  How are you?

16         MR. SINNREICH:  I'm good, Judge.  How are you?

17         THE COURT:  Good.  First fall, I am going to apologize

18 profusely for taking you by surprise here.

19         MR. SINNREICH:  That's okay, Judge.  I am in a

20 conference with a client, so I did jump out of it, of course.

21         THE COURT:  All right.  Hopefully we'll be able to

22 make this brief, all right?  I have all the parties in front of

23 me on the East End Eruv cases and the parties have recently

24 consented to my jurisdiction.  There are a number of matters I

25 am trying to resolve today.  One of them had to do with this

East End Eruv v. Village of Westhampton Beach - 4/12/13      20

1  motion to quash the subpoena on Arnold Sheiffer and Estelle

2  Lubliner and counsel brought to my attention obviously the fact

3  that you are not here and I really don't want to go through this

4  obviously without giving you the opportunity to comment.

5         So my questions at the moment actually are directed

6  more to Mr. Sugarman, so if you could bear with me for a moment,

7  I'll certainly give you the opportunity to respond.  All right?

8         MR. SINNREICH:  Thank you, Judge.

9         THE COURT:  All right.  Mr. Sugarman, or whoever is

10  going to respond, when I went through the motion, some of the

11  things that struck me that counsel for the non-parties brought

12  up had to do with the efforts apparently by the plaintiffs here

13  when the motion to intervene was made and the opposition to that

14  that was voiced before Judge Wexler by the plaintiffs in this

15  case.  I noticed here, I mean you've cited to a number of cases.

16  I'm looking at the bottom of page 1 of your letter here now

17  saying "The deposition discovery regime in particular is an

18  extremely permissive one to which courts have long accorded a

19  broad and liberal treatment to effectuate their purpose at civil

20  trials in the federal courts need not be carried on in the

21  dark."

22         I grant you that but there is typically some greater

23  consideration afforded to non-parties when it comes to be

24  subpoenaed in a case.  In particular, there is a cognizable

25  burden and to the extent that the time that's involved in

East End Eruv v. Village of Westhampton Beach - 4/12/13    21

1   preparing for the deposition and appearing for the deposition

2   and certainly the money involved in terms of expenses when the

3   parties intend to retain counsel for that purpose.

4           So, I do think I need to pay some attention to that

5   fact.  I'm looking over to your argument here that the

6   information is highly relevant.  Again, it seems to be somewhat

7   disjunctive, given the position that you folks took on the

8   motion to intervene.  When you get down to the middle -- to the

9   bottom of page 2, the three examples that you give here -- my

10  question to you is are you deposing these municipal witnesses

11  who are referenced here, first of all?

12          MR. SUGARMAN:  Yes.

13          THE COURT:  All right.  It seems to me -- and again,

14  I'll look at the last section of this page where you're making

15  certain statements here on information and belief, you say that

16  "Deponents continued opposition has fueled the opposition of the

17  municipal authorities in Westhampton Beach and surrounding

18  communities and has informed their decision making processes."

19          You also say on page 3 that there's no undue burden

20  here and as noted, "The deponents have sought to involve

21  themselves in the underlying facts of the case from the outset."

22          And again, I go back to the fact, it appears you

23  didn't want them to do that and so the position that you're

24  taking here now seems to be a little diametrically opposed.

25  I'll let you address this for a moment but I will tell you

East End Eruv v. Village of Westhampton Beach - 4/12/13      22

1  looking at all of this, if you're claiming that these two

2  witnesses somehow unduly influenced the municipalities which

3  seems to be the underlying message in this motion, then my sense

4  of this frankly is that you ought to depose the people in the

5  municipalities first and get what you need from them.  And if

6  you still think at that point that there's information that can

7  only be gleaned from these two witnesses, then come back and

8  make an application to me at that point in time.  It seems to me

9  that's the most practical way to handle this.

10         MR. SUGARMAN:  Well, Your Honor, a couple of things;

11  first of all, there's no question that we oppose the motion to

12  intervene and we moved to dismiss the case brought by the Jewish

13  People Opposed To The Eruv, now known as Jewish People For The

14  Betterment of Westhampton Beach.

15         The standards for intervention and for bringing a case

16  are significantly different --

17         THE COURT:  Very different, obviously.

18         MR. SUGARMAN:  -- from the availability of third-party

19  witnesses.  And I suggest that while -- we don't have a problem

20  in first taking the municipality's depositions, the significant

21  involvement of this organization and in particular, Mr.

22  Sheiffer, starts from day one and goes through.  And one of the

23  issues in the case is -- was the -- were the decisions of the

24  municipalities based on animus, based on the desire to

25  discriminate against the religious minority.

East End Eruv v. Village of Westhampton Beach - 4/12/13      23

1    And in the most recent interrogatory responses, there

2    is identified a meeting among Mayor Teller , Anthony Tohill,

3    Richard Haefeli of Westhampton Beach and Mr. Sheiffer, Mr.

4    Sinnreich.  And there are other meetings that took place and in

5    public meetings, representatives of this organization voiced

6    very significant opposition based on, without any hesitation,

7    based on their desire stated to keep Orthodox Jews out of

8    Westhampton Beach.  There can't be anymore evidence of animus

9    than that.

10    And since it is a burden that we have to prove that

11    that's transferred and caused the animus of the municipalities,

12    these depositions are highly relevant.  I would not --

13    THE COURT:  Well, let me stop you there for one

14    second.  You say some of these statements were made at public

15    meetings.  There's got to be a record of those meetings,

16    correct?

17    MR. SUGARMAN:  There is a record of the meetings but

18    there were also private meetings and we don't know how many.  We

19    know there was one, at least -- two.  And it wouldn't surprise

20    me that if we deposed Mayor Sortorius or Mayor Teller; oh, no,

21    we were not influenced by that.

22    And maybe they will and maybe they won't recall what

23    was said.  It seems to me that this is an important enough issue

24    that we are entitled to have both sides of the conversation.

25    And as far as the burden, this group and these individuals have

East End Eruv v. Village of Westhampton Beach - 4/12/13    24

1   been at this full tilt without any regard for the burden that

2   it's placed on them for two and a half years and so the

3   additional burden of sitting for one deposition and preparing

4   for it, I submit is not very great.

5         THE COURT:  All right.  Well, let me hear from Mr.

6   Sinnreich.

7         MR. SINNREICH:  Your Honor, obviously this does catch

8   me by surprise and my first comment is that as far as I know, I

9   was never served or I have never received -- I can tell you for

10  a certainly, I have never seen any response to my motion.  So

11  what the Court was reading from, I have not seen and I do object

12  to being put on the spot to argue this issue when the Court has

13  been served with a written response that I haven't seen.  So I

14  am going to go on, but I really want to make that very clear.

15        THE COURT:  Well, all right.  Let me stop you for a

16  second.  I'm looking at a letter application here.  It's DE 199.

17  I know that you wouldn't be on the delivery system for ECF, but

18  it was filed on March 29, 2013.  And under the CCS, your name is

19  there.

20        MR. SINNREICH:  Your Honor, I have never seen it --

21  anything I can find out what -- I am sure my associate would

22  have brought it to my attention.  I have never seen it.

23        THE COURT:  All right.

24        MR. SINNREICH:  That's all I can tell you and I can't

25  explain why, but I've never seen it.

East End Eruv v. Village of Westhampton Beach - 4/12/13     25

1        THE COURT:  All right.  I'll tell you what.  In

2    fairness, I am going to give you an opportunity to look at it

3    and then I would like to have a telephone conference next week,

4    so that we can pick this issue up again, all right?

5        MR. SINNREICH:  I would be happy to do that, Your

6    Honor and I appreciate the courtesy.  I can say a few other

7    things if the Court would like me to do or we can wait for the

8    next conference, whatever the Court prefers.

9        THE COURT:  Yes, why don't we wait for the next

10   conference, so we can put it all in context; all right?

11       MR. SINNREICH:  I appreciate that, Your Honor.

12       MR. SUGARMAN:  Judge, we will fax to Mr. Sinnreich

13   another copy of the letter.

14       THE COURT:  Good.  If you could get that to him

15   sometime today, I really would appreciate that.

16       MR. SUGARMAN:  We will.

17       THE COURT:  All right.

18       MR. SINNREICH:  Your Honor?

19       THE COURT:  Yes?

20       MR. SINNREICH:  Will I be given an opportunity -- and

21   it will be within whatever date the Court sets for the next

22   conference, to submit a response to that letter?

23       THE COURT:  Well, usually -- these are letter motions,

24   so your motion to quash went in.  His opposition went in.  I

25   typically don't permit replies.

1      MR. SINNREICH:  Okay.

2      THE COURT:  But certainly anything you want to say to

3  me on the phone --

4      MR. SINNREICH:  Okay.

5      THE COURT:  -- when we talk again is fine.

6      MR. SINNREICH:  That would be great.

7      THE COURT:  Hold on for one minute.  My problem is my

8  time next week is very limited.  I could do this -- short of

9  being on an oxygen tank myself, I can do this on Wednesday at

10  9:30, which is the 17th.

11      MR. SINNREICH:  That's agreeable to me, Your Honor.

12      MR. SUGARMAN:  That's fine with me, Your Honor.

13      THE COURT:  All right.  Wednesday, 9:30 on the motion

14  to quash.

15      MR. SINNREICH:  And do we -- Mr. Sugarman, will you be

16  placing a conference call for that purpose?

17      MR. SUGARMAN:  We'll e-mail around the number if

18  that's what the Court wants.

19      THE COURT:  That's fine.  They've been using a dial-in

20  number and frankly it usually works out better because at least

21  that way I can hear everybody because it's an outside service;

22  all right?

23      MR. SINNREICH:  That's great.  Okay.

24      THE COURT:  So they're circulate it to everybody,

25  including the Court, what the dial-in is.  All right?

East End Eruv v. Village of Westhampton Beach - 4/12/13     27

1          MR. SINNREICH:  Thank you, Your Honor.  I appreciate

2     the courtesy.

3          THE COURT:  All right.  Thank you.

4          MR. SINNREICH:  All right.  Bye-bye.

5          (Mr. Sinnreich leaves the conference.)

6          THE COURT:  So, we'll pick that issue up then on

7     Wednesday morning and anybody else who wants to participate,

8     feel free to get on the call.  All right?

9          And I have no doubt I am going to regret this

10    tremendously but I am going to leave the floor open now for you

11    to bring up anything else that you want to bring up to me.  All

12    right?  Let me start with the plaintiffs.

13         MR. BUCHWEITZ:  Your Honor?

14         THE COURT:  You can stay seated.  That's fine.

15         MR. BUCHWEITZ:  Yeah, yeah, I'm sorry.  I forgot.  It

16    sounds from the defendants that they're going to be raising

17    something related to our privilege log and one of the things

18    that I spoke about with counsel yesterday and we exchanged a

19    letter and had calls and we spoke this morning is there -- is

20    the Village of Westhampton Beach's privilege log.

21         The Village of Westhampton Beach served us a privilege

22    log with three entries on it; two of the entries are from 2008

23    and one is undated but based on who it is, it seems like it's

24    probably from 2010.  There can be -- we're highly skeptical of

25    that.

East End Eruv v. Village of Westhampton Beach - 4/12/13     28

1          THE COURT:  Which part?

2          MR. BUCHWEITZ:  That there are only three entries.

3          THE COURT:  Okay.

4          MR. BUCHWEITZ:  We, you know -- what the Village of

5   Westhampton Beach has had based on public information, as well

6   as in these logs, counsel representing it and the first

7   iteration of an application for an Eruv which came from the

8   Hampton Synagogue, as well as subsequent efforts through Verizon

9   and LIPA.  They sent a letter directly to Verizon telling them

10  -- cc'ing counsel, telling them that they, you know, can't put

11  up -- they shouldn't put up the Eruv without -- allow the lechis

12  without their permission.

13          And we --

14          THE COURT:  Do you have that correspondence?

15          MR. BUCHWEITZ:  Yeah, it's attached to the complaint.

16  I can --

17          THE COURT:  I'm sorry?

18          MR. BUCHWEITZ:  It's attached to the complaint.

19          THE COURT:  Okay, go ahead.

20          MR. BUCHWEITZ:  And the Eruv has been -- whether or

21  not there would be an Eruv in the Village of Westhampton Beach

22  has been an extremely contentious issue for many years now and

23  we just refuse to believe that there could possibly be only

24  three privileged communications in writing for that entire

25  period.

1          In connection with that, the last time we were here

2     where I wasn't, I know that one of the issues that was raised

3     was whether the Village attorneys should be custodians of

4     documents and whether their non-privileged documents should be

5     produced and the privileged documents should be logged.

6          And while we were not heavily involved in that, we

7     have become very concerned this week and I sent letters to

8     counsel that a certain Village attorney Richard Haefeli, has

9     been acting as counsel in this case.  In 2008 -- and we want his

10    documents and we want his documents to be logged.

11         THE COURT:  All right.

12         MR. BUCHWEITZ:  In 2008, he was --

13         THE COURT:  Let me stop you for one second, just so I

14    am clear here.  Is any of this in writing before the Court?

15         MR. BUCHWEITZ:  No.

16         THE COURT:  Okay.  All right.  I just wanted to make

17    sure I didn't miss something here.

18         MR. BUCHWEITZ:  No.

19         THE COURT:  Go ahead.

20         MR. BUCHWEITZ:  In 2008, Mr. Haefeli was retained by

21    the Hampton Synagogue to help it in its application to the

22    Village of Westhampton Beach.  He was an attorney and he was

23    paid and he participated in strategy meetings with people who

24    were involved in the Hampton Synagogue's application and who are

25    also involved in the current lawsuit in the current East End

East End Eruv v. Village of Westhampton Beach - 4/12/13    30

1   Eruv Association effort.

2            THE COURT:  Can you spell his last name for me please?

3            MR. BUCHWEITZ:  H-a-e-f-e-l-i.

4            THE COURT:  Thank you.

5            MR. BUCHWEITZ:  In particular, Morris Tuchman, who was

6   the first witness at the preliminary injunction hearing, one of

7   the named plaintiffs, is also president of the Hampton Synagogue

8   and has been since 2008.  And he indicated that Mr. Haefeli was

9   involved in extensive strategy sessions, including whether there

10  would be future litigation.

11           And when Mr. Haefeli became the Village attorney in

12  2010, the question of the Eruv came up at a Village trustee

13  meeting brought by Mr. Sheiffer and Mr. Haefeli said the

14  following on the record.  Mr. Haefeli said, "I just want" -- and

15  I'm reading from minutes which weren't produced to us but which

16  I got off the Internet -- "I just want to make it very clear

17  that I am recusing myself and would always recuse myself from

18  any consideration of any reference to the Eruv.  I did represent

19  them.  I cannot represent either the Village of the Synagogue.

20  The Village has counsel that they have appointed for that.  So,

21  I am out of the picture.  I'm not in the picture whatsoever and

22  that's what an attorney is supposed to do if there is a

23  conflict."

24           And the Eruv proponents, including Mr. Tuchman, relied

25  on that and when Mr. Haefeli was -- came as an attendee to the

East End Eruv v. Village of Westhampton Beach - 4/12/13     31

1    preliminary injunction hearing when Mr. Tuchman testified, Mr.

2    Tuchman confronted him and said, "What are you doing here?"  And

3    he said, "Oh, I'm just observing."

4            And then all of the sudden, his name appeared on the

5    cover of some papers.  And then all of the sudden, last night,

6    we get -- two nights ago rather, Your Honor, we get a -- the

7    three referenced privilege log, one of which included a

8    memoranda that he did apparently with the Village trustees.  And

9    then -- and this was what I couldn't believe, there's the two

10   meetings in 2012, Mr. Sugarman referenced them; one is not just

11   with the mayor and somebody -- another lawyer, but with Arnold

12   Sheiffer, Pam Sheiffer, Jonathan Sinnreich and Vincent Messina

13   and discussed the Village's position in the litigation.

14           And then on another occasion in 2012, Mr. Haefeli,

15   along with the Mayor, met with Mr. Sheiffer, as well as another

16   person and discussed the Village's position in the litigation.

17   Mr. Haefeli was our lawyer, our client's lawyer.  The Hampton

18   Synagogue is not a party in this case but we do represent them

19   in connection with this letter -- this application right now and

20   the letter that I was asked to write to Mr. Sokoloff last night.

21           And we submit that Mr. Haefeli is hopelessly

22   conflicted.  He should have no role in this case and that his

23   documents, if any, and based on his recusal, we really don't

24   think there should have been any, should be produced to us and

25   if they are privileged documents, they should be lodged, so we

East End Eruv v. Village of Westhampton Beach - 4/12/13     32

1  can assess whether that's the case.

2          THE COURT:  Are you moving to disqualify him?

3          MR. BUCHWEITZ:  We've asked him to withdraw and we're

4  waiting for a response.

5          THE COURT:  Okay.  Do you want to be heard on this?

6          MR. DORFMAN:  Yes, thank you, Judge.  I'm not sure

7  which -- I think I'll just take those issues in turn.  The

8  reason you don't have anything before you in writing, Your

9  Honor, is because we only found out the plaintiffs are having

10  these issues last night or yesterday afternoon.

11          We found out on the first issue we got a letter, the

12  issue of the privilege log.  We got a letter saying that

13  plaintiffs thought it was inconceivable that our privilege log

14  would only contain three entries.

15          First of all, I do not think that word means what they

16  think it means and second, the privilege log is short because

17  there aren't that many privileged documents.  I don't know what

18  kind of assumptions plaintiffs are making about the way that the

19  Village functions or the relative importance of their

20  application in Village affairs but in 2008, when this issue came

21  up before the Village board, it came up for a month or two.

22  There were some meetings about it and then it went away because

23  the Synagogue withdrew its application at that time.  And then

24  the Board heard nothing about it for at least two years until

25  2010, until it came up again when it turned out that the EEEA

East End Eruv v. Village of Westhampton Beach - 4/12/13      33

1  had been working secretly with Verizon and LIPA to try and

2  establish these religious symbols in the Village.

3         So it's not at all surprising that these documents

4  aren't out there.  The Village Trustees are part-time.  They

5  come into the Village to do meetings every week and then they go

6  about their lives and they go about their jobs.  When there's an

7  issue that comes up, the Village clerk sends all the Trustees an

8  e-mail and the Trustees get their e-mail and then they get

9  together with the attorney and they talk about it.

10         So, it's far from inconceivable that this would be the

11  case and in fact it is the case.  We've gone through the

12  documents and we've produced the privilege log for those

13  documents that are privileged.

14         On the second issue of Mr. Haefeli as custodian, Your

15  Honor heard about this last time we were here and, in fact, this

16  issue first came up in October when we were working out the

17  lists of who would be custodians and who wouldn't be custodians

18  for ESI and I told all the parties at that time that we would

19  not agree to include Mr. Haefeli on a list.

20         First of all, let me back up for a second and say who

21  is Mr. Haefeli.  Mr. Haefeli is an attorney with his own law

22  firm who is retained by the Village from year-to-year to

23  represent the Village.  Mr. Haefeli has his own case load

24  outside the Village.  He's not a Village employee.  So, Mr.

25  Haefeli is retained to represent the Village, just like Sokoloff

East End Eruv v. Village of Westhampton Beach - 4/12/13     34

1   Stern is retained to represent the Village of Westhampton Beach

2   and just like Mr. Sugarman's office is retained to represent the

3   EEEA.

4          When the issue came up in October, that's exactly what

5   I said, I said it's not more -- it is no more proper to put Mr.

6   Haefeli on the list of custodians than it would be to put Weil

7   Gotshal on the list of custodians or to put Sokoloff Stern on a

8   list of custodians.  At that time, plaintiff said fine, we won't

9   put them on the list.

10          Then we get to the last time we were before Your Honor

11   and on the eve of getting together with Your Honor, Verizon and

12   LIPA raised the issue of putting Dick Haefeli on the list of

13   custodians.  At that time, we said no, we are maintaining our

14   position that they shouldn't be added to the list and

15   plaintiffs, the EEEA plaintiffs sitting here at that time said

16   nothing about it.  Did not take any position either way, were

17   not interested in the issue.

18          Your Honor said if they wanted Dick Haefeli added to

19   the list, then they should make a motion by March 15th.

20   Apparently no one wanted to do that.  March 15th came and went

21   and Richard Haefeli was not added to the list of custodians.

22   Now the EEEA plaintiffs come before Your Honor saying we have

23   all these documents, all of the sudden we know things about Mr.

24   Haefeli.  Well, I don't think that this is an issue that just

25   came up yesterday.  Mr. Haefeli was on the cover of our briefs

East End Eruv v. Village of Westhampton Beach - 4/12/13      35

1    for motion for summary judgment as far back as last August.  It

2    said Sokoloff Stern, Law Offices of Richard T. Haefeli.  So,

3    plaintiffs have known for a while that Mr. Haefeli was involved

4    in representing the Village of Westhampton Beach in this action.

5          So, there are no surprises here.  When we did our

6    interrogatory responses several months ago, they say now, oh, we

7    just got these supplemental responses and they talk about

8    meetings with Mr. Haefeli.  Well, when we did our interrogatory

9    responses initially, we included information about meetings

10   between Mr. Haefeli and people from the Jewish -- People For The

11   Betterment of Westhampton Beach.

12         So none of this is news.  I don't honestly know why

13   it's coming up today.  Maybe it's because these issues with the

14   EEEA plaintiff's privilege logs are coming up today -- are

15   coming up and they want to raise an issue with us.  I don't know

16   but --

17         THE COURT:  The fact that you don't know is

18   significant.  What's significant to me also is this all

19   apparently percolated yesterday.  You found out about it last

20   night.  I don't think you folks have had an opportunity to have

21   any kind of discussion as needed to comply with your obligations

22   under Rule 37.3 to see if you can hash this out and figure out

23   what needs to be done.  And I am going to give you that

24   opportunity.  I am going to require you to take that opportunity

25   and if you can't resolve what needs to e resolved, then if the

East End Eruv v. Village of Westhampton Beach - 4/12/13     36

1    plaintiffs feel that they need to move for relief, I'll let you

2    do it by letter motion and that's to be filed with me no later

3    than the 22nd; all right?  That's a week from Monday.

4              MR. DORFMAN:  Okay.

5              MR. BUCHWEITZ:  Judge?

6              THE COURT:  And once -- if that happens, then whoever

7    wants to oppose the relief, you've got until that Friday to put

8    your opposition in; all right?

9              MR. DORFMAN:  If Your Honor would just like me address

10   the third -- the conflict issue --

11             THE COURT:  Go ahead.

12             MR. DORFMAN:  -- for just a moment.  Here's the

13   conflict issue or the non-existence of the conflict issue.  Mr.

14   Haefeli did represent the Westhampton -- the Hampton Synagogue

15   in 2008.  Again, as I said, the Hampton Synagogue withdrew its

16   application and from that period on, as far as we know, and as

17   far as the plaintiffs have been saying all along, the Hampton

18   Synagogue has had absolutely nothing to do with any intention to

19   create an Eruv in the Village of Westhampton Beach.

20             In 2010, when the Village found out that someone was

21   trying to put up an Eruv in the Village of Westhampton Beach,

22   there was this board meeting and Mr. Haefeli said that he cannot

23   represent the Village in the matter because he believed that the

24   Synagogue was bringing this application, that the Synagogue was

25   involved, his former client.  Of course that make sense.

East End Eruv v. Village of Westhampton Beach - 4/12/13      37

1          So the Village hired another attorney to represent it.

2    Then in the weeks that followed, the EEEA and its members

3    started to make public statements to the effect that we have

4    nothing to do with the Synagogue.  This application has nothing

5    to do with the Synagogue and so what I have here, I brought an

6    exhibit.  It's a newspaper article from the time and it says,

7    "Mr. Tenzer has said that the new proposal which encompasses a

8    larger area than the 2008 proposal has nothing to do with

9    Hampton Synagogue," Mr. Tenzer being one of the plaintiffs in

10   this case and a member of the EEEA.

11         Mr. Haefeli and the Village relied on plaintiffs own

12   statements to this effect and after being convinced by these

13   statements that that was the case, only then did Mr. Haefeli

14   start to participate again in this matter.

15         So that's the whole conflict -- supposed conflict

16   situation as it stands and I am sure if we can't resolve it,

17   there will be more briefs before Your Honor.

18         MR. BUCHWEITZ:  Just one thing, Your Honor, and we'll

19   otherwise wait until April 22nd, we did discuss -- I did discuss

20   this issue yesterday with Mr. Dorfman and it did -- the

21   privilege log and the supplemental responses that were served

22   were served on April 10th but I did discuss this issue and when

23   he raised this comment that the Hampton Synagogue is not a

24   plaintiff in this case and, you know, these public statements I

25   said, "Have you ever heard of the term substantially related?"

East End Eruv v. Village of Westhampton Beach - 4/12/13      38

1  Mr. Haefeli knows that these are the -- that these matters are

2  substantially related, that it's a violation of Rule 1.9, Rule

3  1.11 and Rule 1.6 of the New York Rules of Professional Conduct

4  and our primary request here is that he get out of this case.

5              THE COURT:  All right.  Well look, let me just caution

6  you.  First of all, I appreciate getting a heads up to the fact

7  that this is an issue.  I have a habit of not ruling from the

8  bench on things I hear for the first time with no papers in

9  front of me, especially when you're talking about disqualifying

10  an attorney.

11             So as I said, you're going to go ahead, have your meet

12  and confer and if you don't reach a resolution and I suspect you

13  may not, then you're going to make the proper motion.  One thing

14  I will tell you, depending on what the nature of the relief is

15  that you're seeking, if it's a motion to disqualify, you need to

16  do that on formal papers, not on a letter motion; all right?

17  But otherwise, whatever relief you're requesting, if it's not

18  that, then you can certainly do it by letter motion; all right?

19             MR. BUCHWEITZ:  Thank you.

20             THE COURT:  If you decide you need to make a formal

21  motion, get together with counsel and get a briefing schedule

22  set up and please somebody put something up on ECF telling me

23  what the briefing schedule is that you've agreed to; all right?

24             All right.  What else is on your agenda for things we

25  need to resolve today or talk about today?

East End Eruv v. Village of Westhampton Beach - 4/12/13     39

1        MR. SUGARMAN:  Your Honor, there's one more issue that
2    I would like to raise and that involves the stated intention of
3    the defendants to take the depositions of four rabbis; Rabbi
4    Unsdorfer, Rabbi Meir, as he is known, Rabbi Schneier and Rabbi
5    Bronstein.
6        Rabbi Unsdorfer is the religious authority which has
7    been -- who has been advising the Eruv Association as to where
8    the lechis should go and what should be -- what could be the
9    boundaries of the Eruv.  Rabbi Meir supposedly allegedly issues
10   a proclamation which in certain circumstances is necessary for
11   there to be an Eruv.  Rabbi Schneier is the Rabbi of the Hampton
12   Synagogue and Rabbi Bronstein was the associate Rabbi of that
13   synagogue.
14       When we inquired as to the basis for these requests,
15   there were two that were given to us; one, to establish what the
16   Eruv consists of and second, to probe the sincerely held --
17   whether there is a sincerely held religious belief on the part
18   of the plaintiffs that they need an Eruv in order to carry or
19   push strollers on Shabbat and on Yom Kippur.
20       As to the first of those issue, what constitutes the
21   Eruv; what constitutes the Eruv is -- has been disclosed.  It is
22   natural boundaries.  It is existing overhead wires and it's
23   lechis on identified poles.  Maps have been introduced.  Pole
24   location have been provided.  That is what the Eruv is all about
25   and there is no need for further inquiry.  It is what it is and

1   that's the Eruv that plaintiffs contemplate and the lechis on

2   the poles.

3           The second basis is whether the plaintiffs have a

4   sincerely held religious belief that an Eruv is necessary.  The

5   Eruv concept originated 2000 years ago.  There's a tractate in

6   the Talmud devoted to Eruvin.  There are hundreds of Eruvin all

7   over the country.  This is the fourth litigation involving

8   Eruvin.  This argument has never been raised once that we know

9   of in any case or in any -- in any community.

10          Mr. Tuchman testified at the preliminary injunction

11  hearing as to his sincerely held religious belief as to the need

12  for the Eruv and there was no cross-examination on that issue.

13  The Supreme Court in the Smith case made it very clear that the

14  Courts just cannot and should not get involved in evaluating

15  religious matters.  And so we respectfully suggest that the

16  depositions of these four rabbis should not take place.

17          THE COURT:  All right.

18          MR. DORFMAN:  Judge, if I might?  On Monday I

19  requested that plaintiffs produce to us the names -- the full

20  names, addresses and contact information of four potential non-

21  party witnesses who are these rabbis.  These witnesses, as I

22  said, are non-parties.  I don't know why at this point we should

23  have to even request that information.  These are things that

24  are plainly relevant to plaintiff's claims and defenses in this

25  case and probably should have been provided with their names in

East End Eruv v. Village of Westhampton Beach - 4/12/13     41

1    the 26(a) disclosures.  They weren't.

2            Instead, we had to wait until we got their 10,000 page

3    e-mail and document production and go through it and find the

4    names of these rabbis who are the ones that establish why the

5    Eruv has to be where it is, why the lechis have to go where they

6    go.  Rabbi Schneier is the Hampton Synagogue rabbi who was

7    probably, I think, the main person involved in the 2008

8    application for that Eruv and plaintiffs have made that

9    application a part of this case.

10           Rabbi Bronstein, according to the e-mails worked hand-

11   in-hand with plaintiffs from 2009 on to make applications -- to

12   figure out the boundaries for the Eruv, make applications to

13   Verizon and LIPA.  These are people who are all over this case.

14   I asked for their contact information.  I haven't been provided

15   that contact information.  I would like to subpoena these

16   witnesses and have them in for a deposition.  We were just

17   talking about a motion to quash a few minute ago where these

18   lawyers wrote that the rules are extremely permissible for non-

19   party depositions.

20           These rabbis are -- and there might be others we have

21   supplemental interrogatory responses that list several more

22   people that were key to this issue.  Plaintiffs brought this

23   case claiming that they want the Eruv that they want and it goes

24   where it goes and we're not allowed to ask any questions about

25   that.  Mr. Sugarman is saying Judge, take our word for it.  This

East End Eruv v. Village of Westhampton Beach - 4/12/13      42

1    is what it has to be, ask no further and we can ask no further.

2              I don't think that the rules of discovery require us

3    to stand pat and take plaintiff's version of these things.  When

4    the witnesses testified at the preliminary injunction hearing

5    and we asked you know where do you get these --

6              THE COURT:  What witness?

7              MR. DORFMAN:  -- religious beliefs --

8              THE COURT:  -- what witnesses?

9              MR. DORFMAN:  Oh, I'm sorry.  It was Mr. -- was it Mr.

10   Tuchman?  I believe it was Mr. Tuchman who is one of the

11   plaintiffs in this case.  When he testified and we asked where

12   do you get these religious beliefs, what about your beliefs say

13   that you need these lechis where they are, all matters directly

14   related to the free exercise claims, Mr. Sugarman said the same

15   thing, that you're not allowed to ask these questions.

16             What Mr. Tuchman said and I apologize if it wasn't Mr.

17   Tuchman, but what the witnesses said was "because the rabbis

18   told us so."  We should not have to take the plaintiff's words

19   for that and should at least have an opportunity to ask the

20   rabbis, what did you tell him?  And so that's what we're asking

21   for here.

22             But at the outset, we're not even there yet.  All

23   we're asking for is their full names and addresses.  Reb Meir,

24   Mr. Sugarman said Reb Meir or Reb Meir as the so-called Reb

25   Meir, we don't even have his full name.  I don't even know if

East End Eruv v. Village of Westhampton Beach - 4/12/13     43

1   that's really his name.  So that's where we are.

2          So, I would like to get that information.  I would

3   like to subpoena these witnesses and if counsel has a problem

4   with them being deposed, then they can make a motion to quash.

5          UNIDENTIFIED SPEAKER:  Your Honor, we also -- oh, I'm

6   sorry.

7          MR. SOKOLOFF:  May I just amplify a little bit please?

8   There are two other reasons that we would like to subpoena these

9   witnesses.  First, when this case was brought and in the

10  original complaint that's on file, they alleged that the lechis

11  have to be wooden sticks that are going to be attached to the

12  pole and they have to be a certain length.  And when we came

13  into court and we had our first conference with Judge Wexler,

14  Mr. Sugarman brought in this bring long stick and said this is

15  what the lechis has to be, take a look at it.  It's not so bad.

16         Somewhere along the way, the complaint was amended and

17  the new complaint says that the Eruv is -- that they want is a

18  different dimension.  It covers a different area than the Eruv

19  in the first complaint and the lechis now can't be the wood that

20  Mr. Sugarman brought in.  Now they have to be a piece of plastic

21  that have to go all the way up to the poles.

22         We were baffled by this.  We tried to raise this issue

23  in the preliminary injunction hearing and the explanation for

24  why -- is it a bait and switch or what is the reason that now

25  you -- first you said it has to be this and now you're saying it

East End Eruv v. Village of Westhampton Beach - 4/12/13      44

1   has to be that.  What is the reason for the change?  The answer

2   was this is what the rabbis have told us.

3        Second thing, and this is very important here.  Mr.

4   Sugarman represented the Synagogue in Westhampton Beach in 2008

5   when it publicly raised a desire to have an Eruv in Westhampton

6   Beach. It was put on an agenda for the next Village board

7   meeting.  The Hampton Synagogue asked that it be pulled off the

8   agenda.  The next thing that the Village heard was it's being

9   sued.  That's a couple of years later.

10       Now in advance of the meeting with Westhampton Beach,

11  Mr. Sugarman, the lawyer for the Synagogue tried to explain what

12  an Eruv is and what is required.  And he said it requires a

13  demarcated area and number two -- one and two, there has to be a

14  proclamation by a civil authority saying that it's okay.  And

15  when this came up in the preliminary injunction hearing, where

16  are you going to get your proclamation from a civil authority

17  because that may tip the balance on an establishment clause

18  claim.  It may not.  It may.  Nobody seemed to know.  Oh, we

19  don't need that anymore.

20       I think one of the witnesses said something like oh,

21  Governor Patterson came through the Village one day and Governor

22  Patterson said it's okay with him, so according to our rabbis,

23  that's good enough to be the religiously needed proclamation

24  from a civil authority.  There seems to be some indication in

25  the e-mails that is it -- I think it's Reb Meir is the chaplain

East End Eruv v. Village of Westhampton Beach - 4/12/13     45

1   or was the chaplain of the Port Authority Police and somehow we

2   can't piece it together from the e-mails.  Maybe the -- if the

3   chaplain of the Port Authority Police gives us the proclamation,

4   well, he's with the Port Authority, that's good enough; we don't

5   know.  We can't figure this out.  And these rabbis have the

6   answers.

7           The plaintiffs are claiming a religious need.  There

8   is nothing wrong with looking into that issue.  When a --

9   generally a plaintiff -- an individual has a doctor-patient

10  privilege but when somebody brings a claim that puts his or her

11  physical condition in issue, suddenly it's okay to question the

12  doctor.

13          Well, this is totally analogous to the doctor-patient

14  privilege issue because the plaintiffs by virtue of their

15  allegations and their testimony in the case, have put their

16  claimed religious need and what is required in issue.  They said

17  the rabbi -- these identified rabbis have the answer and I think

18  we have a right to test that.  And now they can't just say that

19  and then hide the rabbis away somewhere, so nobody can question

20  them.

21          THE COURT:  Anyone else?

22          MS. WEISGERBER:  Your Honor?

23          UNIDENTIFIED SPEAKER:  Your Honor, if I may --

24          MS. WEISGERBER:  If I may add to that?

25          UNIDENTIFIED SPEAKER:  I'm sorry, go ahead.  No, go

East End Eruv v. Village of Westhampton Beach - 4/12/13      46

1    ahead.

2              THE COURT:  Hold on one second.  Whose phone is that?

3              MS. DEJONG:  Most likely mine, Judge.  Your Honor, I

4    apologize.

5              THE COURT:  That's all right.

6              MS. DEJONG:  Judge, if I may, I join with Westhampton

7    Beach on this application and I'm not going to -- I'm going to

8    try not to be repetitive and I'll be short on this but I think

9    because it's an establishment clause, I think the defendants are

10   entitled to determine what the nature of the burden is, what the

11   nature of the Eruv is.

12             Mr. Sugarman said just before it is what it is.  Well,

13   it's not what -- we don't know what it is.  It's changed.  When

14   we first became involved in it, they had the Eruv boundary in a

15   certain area and we were told that it couldn't double-back on

16   Dune Road.  We were told that it couldn't go over water.  And

17   then all of the sudden, miraculously, then it can go over water

18   because apparently you can use docks, the wooden structures of

19   the docks as part -- connecting up the Eruv.

20             It just keeps changing and I think we're entitled to

21   due discovery to figure out exactly what it is.  With regard to

22   the proclamation, just having read a few of these e-mails, it

23   tell us that there is some sort of proclamation in effect or

24   something happening when, in fact, we were told oh, they didn't

25   need a proclamation.  All the literature that I have read about

East End Eruv v. Village of Westhampton Beach - 4/12/13      47

1   the Eruv says that a proclamation is needed and the plaintiffs

2   are telling us well, we don't need one.  Yet these e-mails look

3   like there is an issue.  So I think at the very least, we're

4   entitled to ask the rabbis about those things.

5          THE COURT:  All right.  Now look, we're not here to

6   decide the merits of any of this today but in terms of discovery

7   what I will say is I think since the Eruv is one of the

8   underlying issues in this case, the defendants certainly have

9   the right to make a further inquiry here.

10          Now depending on the scope of that inquiry -- and by

11   the way, I am not issuing advisory opinions here and frankly,

12   this issue isn't even ripe yet because no one has been

13   subpoenaed on the one hand.

14          On the other hand, I will tell you I don't know why

15   you need four rabbis to tell you this, okay?  So, I think you

16   should all think a little bit further about this.  Especially

17   since everyone is telling me you know, how expensive this is and

18   -- with the municipalities involved, et cetera, et cetera.

19          MR. DORFMAN:  Judge, they do each -- I'm sorry, Judge.

20   They do each relate to a separate issue.

21          THE COURT:  Fine.

22          MR. SUGARMAN:  Your Honor?

23          THE COURT:  You'll talk to each other about this.

24   Give them the addresses.  Let them file a subpoena.  You could

25   move to quash.  Your clients certainly have an interest in this,

East End Eruv v. Village of Westhampton Beach - 4/12/13    48

1   so they have standing if they want to move to quash.  That's not

2   an issue as far as I am concerned.  Go ahead.

3       MR. SUGARMAN:  The only thing that I would add is yes,

4   there have been changes in what the Eruv consisted of.  At the

5   outset as in other cases, it was thought that a proclamation was

6   necessary.  The plaintiffs got an opinion that in this case, in

7   this situation, under religious law, a proclamation is not

8   necessary.  And therefore, there is no proclamation.

9       THE COURT:  And that's fine Mr. Sugarman.  I don't

10  have any problem with that but they have the right to explore

11  that.

12      MR. SUGARMAN:  But -- no, but I respectfully disagree

13  that they have the right because we are not claiming that a

14  proclamation is necessary.  We are not claiming that a

15  proclamation exists.  There's a suggestion that the existence of

16  some proclamation up in the air is an establishment clause

17  violation.  If there's no proclamation, and there is no

18  proclamation and we've said that before Judge Wexler and I will

19  say it again today, there is no proclamation necessary under

20  religious law for the Eruv in the Hamptons.

21      And if that's the case, then there's no relevance to

22  an inquiry as to whether some proclamation that was talked about

23  before might constitute an establishment clause violation.

24  There is no proclamation.

25      THE COURT:  All right.

East End Eruv v. Village of Westhampton Beach - 4/12/13      49

1      MR. SUGARMAN:  And the second point I would make is

2  yes, the scope of the Eruv has changed.  The nature of the

3  lechis has changed.  One of the reasons they've changed is

4  because Verizon required because they were of a certain length,

5  that they had to be PVC as opposed to wood.

6      But again, whether at one point the lechis were going

7  to be wood and whether at one point the lechis -- the Eruv

8  boundaries were going to be smaller than they are today; is

9  again irrelevant.  The relevance is what is the Eruv today that

10 is being requested and the only requests because the boundaries

11 exist, the natural boundaries exist, the overhead wires exist,

12 the only issue is whether these lechis can put -- be put on the

13 poles and whether in a prior iteration of the Eruv, the lechis

14 were going to be on different poles is totally irrelevant to

15 what the present application is, with the present issue is.

16      THE COURT:  All right.

17      MR. SUGARMAN:  And the present issue is not in

18 dispute.  And so all of this inquiry as to what it was and what

19 it might have been and what it could have been, and why it

20 should have been and what it isn't -- what it isn't because it

21 isn't, is frankly in our view, just further delay, further

22 obfuscation and grasping at straws to surface an issue that is

23 totally irrelevant.

24      THE COURT:  All right.  So as I said --

25      UNIDENTIFIED SPEAKER:  Your Honor?

East End Eruv v. Village of Westhampton Beach - 4/12/13      50

1    THE COURT:  As I said, I'm not here to decide the

2    merits of anything today.  I'm willing to be persuaded and I'm

3    willing to look at the law that applies here.  You say it's

4    completely irrelevant at this point.  They say it's critical to

5    their case.  All right?  Somebody's right here.  I don't know

6    who it is right now.  And so as I said, I'm willing to be

7    persuaded but you're going to have to do it in proper fashion

8    and that is right now there's nothing preventing them from

9    serving non-party witnesses with subpoenas, much the way you

10   did.  So, once that's done, you can -- if you want to move to

11   quash, move to quash.

12   And I'll telling all of you, no depositions -- we've

13   already said they're not taking place until you get some further

14   direction from me but until this issue is resolved, nobody is to

15   be deposed.  And if you're going to provide information to me,

16   you're going to also have to convince me why you need to talk to

17   four different rabbis, okay?

18   MR. BUCHWEITZ:  Your Honor, I would just point out

19   that there are nine depositions scheduled that they're taking of

20   or side and I did point out that they've never asked for relief

21   from the ten deposition limit.  And all of these people --

22   certainly Rabbi Schneier who was in our complaint, Rabbi

23   Unsdorfer was in Mr. Tuchman's testimony, Rabbi Bronstein was

24   disclosed much earlier and they never asked for relief from that

25   and I would just point that out.  And if they do try to get more

East End Eruv v. Village of Westhampton Beach - 4/12/13      51

1   than ten, we will be -- that would be one of the reasons that we

2   would be opposing it.

3          THE COURT:  All right.

4          UNIDENTIFIED SPEAKER:  All right.

5          THE COURT:  And if you're not going to consent to more

6   than ten --

7          MR. BUCHWEITZ:  I already did.

8          THE COURT:  -- then you have to --

9          MR. BUCHWEITZ:  I made an offer and they rejected it.

10         MR. DORFMAN:  Judge, I was just going to address this

11  issue of the -- or seeing if Your Judge would like to address

12  the issue of the ten deposition limit.  It is something that

13  came up while we were discussing whether --

14         THE COURT:  Yes, but here's the point.  Have you all

15  talked at length with each other?

16         MR. SUGARMAN:  Yes.

17         MR. DORFMAN:  Yes, oh yes.

18         THE COURT:  You know there's one thing to have a

19  motion in front of me where I have people's arguments and the

20  case law to support it and to have another situation like we're

21  having this afternoon where everybody is just throwing out

22  whatever is on their plate to get resolved.  It's not going to

23  happen today.  So, I will hear from you very briefly on this

24  issue but that's it, all right?  Go ahead.  Whoever is going to

25  speak; go.  I'm listening.

East End Eruv v. Village of Westhampton Beach - 4/12/13     52

1          UNIDENTIFIED SPEAKER:  (Indiscernible) speak.

2          MR. DORFMAN:  I understand we're not going to get a

3    ruling today.  I just wanted to -- in negotiating about what

4    depositions are going to take place, I think ahead of time it

5    would be helpful to have some guidance about what the deposition

6    limit is going to be.  And we --

7          THE COURT:  Well, let me give you some guidance right

8    now and I will tell you this, in every case I have in front of

9    me where people are asking for more than ten depositions, they

10   have to make a motion and in that motion they have to describe

11   who this witness is, what's the information that's material to a

12   claim or a defense in the case and why is that information not

13   cumulative.  That's the application.

14         MR. DORFMAN:  Judge, would -- is that the same in

15   where more than one case is consolidated together for discovery?

16   Because in this case, we've got --

17         THE COURT:  You're not limited to ten depositions

18   based on the fact that these are multiple cases.  So, had you

19   left them unconsolidated, you would have had the same rights.

20   You would have had ten depositions in each case.  So that's the

21   principle you should be going on.

22         MR. DORFMAN:  So, right now we have ten depositions in

23   each case.

24         THE COURT:  Yes.

25         MR. DORFMAN:  Thank you, Your Honor.

East End Eruv v. Village of Westhampton Beach - 4/12/13    53

1        THE COURT:  What else?

2        UNIDENTIFIED SPEAKER:  I know that since that's the

3   case, I don't think you'll be hearing about this issue again.

4        MR. BUCHWEITZ:  Can I just ask you one question, Your

5   Honor?

6        THE COURT:  Yes.

7        MR. BUCHWEITZ:  Clarification on that; when I raised

8   the ten deposition issue with counsel for defendants, they said

9   "Oh, well that's not a problem, I'm just going to use the same

10  depositions.  "I'm going to take them in the Verizon case

11  instead," and I said, "Well, are you planning on using them in

12  our case then?"  And he said, "Well, yeah."

13       So, I believe, Your Honor, you know, if they're taking

14  a deposition in the other case, they can't use the fact that

15  there are two cases as an end run around the ten deposition

16  limit.

17       THE COURT:  Well, do you know what?  It's all the more

18  reason why I am going to hold you to the rules in this district

19  and that is; comply with your obligations under Rule 37.3 and

20  when you've done that in good faith and can't resolve the issue,

21  then come on back to me.  Okay?

22       MR. BUCHWEITZ:  Thank you, Your Honor.

23       THE COURT:  Okay.  Anything else from the plaintiff's

24  side?

25       MR. BUCHWEITZ:  No, Your Honor.

East End Eruv v. Village of Westhampton Beach - 4/12/13    54

1          THE COURT:  Okay.

2          MR. BUCHWEITZ:  Well, sorry.

3          THE COURT:  We're working our way up to the --

4          MS. WEISGERBER:R  Hi, this should be considerably

5   shorter.  Thanks for your patience, Your Honor.  First, I just

6   want to clarify the record on two things, just for my client's

7   sake.  Westhampton Beach suggested that the EEEA was working

8   secretly with Verizon and LIPA in --

9          THE COURT:  Can you bring that mic over a little bit?

10  I'm really having trouble hearing you.

11         MS. WEISGERBER:R  Sure.  Westhampton Beach suggested

12  that Verizon and LIPA were working secretly with the EEEA in

13  2010.  Just to clarify the record, that suggests something

14  clandestine, that's something that certainly was not the case.

15  It was our normal application process.

16         With respect to the motion to compel, counsel for

17  Westhampton Beach said, you know, we were supposed to file by

18  March 15th.  Counsel for Westhampton Beach had asked us to put

19  it off during the pendency of negotiating our stipulation that

20  we submitted to the Court.  So, that wasn't even submitted to

21  the Court on March 20th.

22         That said, Verizon and LIPA have been working to kind

23  of -- trying to resolve as many discovery issues without

24  bringing them before the Court but I just did want to clarify

25  that Westhampton Beach had asked us to delay that from the March

East End Eruv v. Village of Westhampton Beach - 4/12/13      55

1   15th date.

2                THE COURT:  Okay.

3                MS. WEISGERBER:R  You know, Verizon and LIPA are just

4   seeking a declaratory judgment of their rights and obligations

5   in this case.  We're complying with as many discovery deadlines

6   as we can.  We're going along with this.  We're trying to avoid

7   discovery disputes.

8                We think the issue of our authority is resolvable on

9   the papers.  That's why we spent all that time negotiating the

10  stipulation.  And we would also submit that the other issues

11  that are unique to the utilities are resolvable on the papers.

12  So, we would request Your Honor's direction, I guess, once an

13  opinion is issued on our authority as to how to proceed at that

14  time.

15               THE COURT:  Okay.

16               MS. PINCUS:  I really have nothing further to add.  I

17  just join in the statements of Verizon.

18               THE COURT:  God bless you.  I'm kidding.  Go ahead.

19  How about the defendants?

20               MR. SOKOLOFF:  I think they stole our thunder and we

21  dealt with everything we needed to on their direct case.

22               THE COURT:  Okay. How about Ms. DeJong?

23               MS. DEJONG:  I think we're fine, Judge.

24               THE COURT:  Okay.

25               MS. DEJONG:  I think we've taken care of everything.

East End Eruv v. Village of Westhampton Beach - 4/12/13      56

1          THE COURT:  All right.  We'll go through sometime

2     between now and Monday and at least summarize the rulings here.

3     I'm not going to summarize the arguments.  You folks can get a

4     transcript if you want one.

5          I am going to be anxious to get the transcripts from

6     the other appearances in the case, just because I think that

7     would be very helpful to me.  And as I said to you, it's my

8     intention to get through that information and then to contact

9     you all right away as to where we're going as far as depositions

10    are concerned.  All right?

11         I think that does it for today.  Have a good evening

12    and enjoy your weekend and I will wait to hear from you.

13         MS. WEISGERBER:  Thank you, Judge.

14         MR. SUGARMAN:  Thank you, Your Honor.

15         MR. SOKOLOFF:  Thank you, Your Honor.

16                        - o0o -

17

18

19

20

21

22

23

24

25

```
1                           CERTIFICATION

2

3          I, Linda Ferrara, certify that the foregoing is a

4     correct transcript from the official electronic sound recording

5     of the proceedings in the above-entitled matter.

6     Dated:  April 23, 2013

7

8                            _____

9                            Signature of Approved Transcriber

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```