UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
CLERK

11/25/2013

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

```
----------------------------X
                            :   11-CV-213 (AKT)
EAST END ERUV ASSOCIATION,  :   11-CV-252 (AKT)
INC., et al.,               :   13-CV-4810 (AKT)
            Plaintiff,      :
                            :   November 8, 2013
                            :
            V.              :   Central Islip, NY
                            :
THE TOWN OF SOUTHAMPTON,     :
et al.,                     :
            Defendant.      :
----------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR CONFERENCE
BEFORE THE HONORABLE A. KATHLEEN TOMLINSON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          ROBERT SUGARMAN, ESQ.
                            YEHUDAH BUCHWEITZ, ESQ.
                            ERICA WEISGERBER, ESQ.
                            ZACHARY MURDOCK, ESQ.


For the Defendant:          BRIAN SOKOLOV, ESQ.
                            LEO DORFMAN, ESQ.
                            JELTJE DeJONG, ESQ.
                            JOSHUA SHTEIERMAN, ESQ.
                            SETH PRESSER, ESQ.


Court Transcriber:          ARIA SERVICES, INC.
                            c/o Elizabeth Barron
                            102 Sparrow Ridge Road
                            Carmel, NY 10512
                            (845) 260-1377


Proceedings recorded by electronic sound recording,
transcript produced by transcription service

```
1              THE CLERK:  Calling case 13-CV-4810, East
2   End Eruv Association, Incorporated v. The Town of
3   Southampton.  Also calling case 11-CV-213, East End
4   Eruv Association, Incorporated v. The Village of
5   Westhampton Beach, et al., and case 11-CV-252, Verizon
6   v. The Village of Westhampton Beach, et al.
7              Please state your appearances for the
8   record.
9              MR. SUGARMAN:  Good morning, your Honor.
10  Robert Sugarman and Yehudah Buchweitz from Weil Gotshal
11  & Manges, pro bono counsel for the East End Eruv
12  Association and the individual plaintiffs.
13             THE COURT:  Good morning.
14             MS. WEISGERBER:  Good morning.  Erica
15  Weisgerber, Debavoise & Plimpton, for Verizon New York.
16             THE COURT:  Good morning.
17             MR. MURDOCK:  Good morning.  Zachary
18  Murdock, Laze Aptheker Rosella & Yedid for LIPA (ph).
19             THE COURT:  Good morning.
20             MR. SOKOLOV:  Brian Sokolov, Sokolov Stern,
21  LLP, for The Village of Westhampton Beach, defendants.
22             THE COURT:  Good morning.
23             MR. DORFMAN:  Good morning, your Honor.  Leo
24  Dorfman from Sokolov Stern, LLP, for the same
25  defendant.
```

```
1              THE COURT:  Good morning.

2              MS. DeJONG:  Jeltje DeJong of the firm of

3   Devitt Spellman Barrett, for the Village of Quag (ph).

4   Good morning, your Honor.

5              THE COURT:  Good morning.

6              MR. SHTEIERMAN:  Good morning, your Honor.

7   Joshua Shteierman from Devitt Spellman Barrett, for the

8   Village of Quag.

9              THE COURT:  Good morning.

10             MR. PRESSER:  Good morning, your Honor.

11  Seth Presser from Jaspan Schlessinger, LLP, for the

12  Town of Southampton.

13             THE COURT:  Good morning as well.  You can

14  see we're doing well with sequestration.  We're down to

15  one microphone on that side.  In any event, we'll take

16  it from there.

17             Well, I'm happy to see this illustrious

18  calling together of counsel one more time here.  We've

19  spent some time trying to get our ducks in a row as to

20  where this case is going.  There are a number of things

21  I want to go over with you this morning.  I'm just

22  going to ask you to have some mercy on me.  Let me get

23  through them, and then I will open the floor to

24  whatever else anybody wants to address today, all

25  right?
```

```
1              First of all -- and I'm starting probably
2    from more recent and working my way back.  I'm talking
3    specifically now about CV-13-4810, which is the action
4    -- the new action from East End v. The Town of
5    Southampton and the Zoning Board.
6              First of all, it appears to me that what
7    happened here essentially is that the plaintiffs did
8    follow the suggestion/direction/urging, however you
9    want to characterize it, of Judge Wexler from February
10   4th, which was to complete the process with the Town and
11   then come back.  It appears that was done, on the basis
12   of the new complaint that's been filed.
13             What this says to me is, I need to at least
14   clarify whether or not the original claims set forth in
15   the first complaint against the Town are now moot for
16   all purposes, and I would at least like to get an
17   answer with regard to the plaintiffs' position on that.
18             MR. BUCHWEITZ:  Yes, they've been supplanted
19   by the new complaint.
20             THE COURT:  Fine.
21             The motion to intervene by JPOE is sub
22   judice at this point and a decision will be issued on
23   that very shortly.
24             The defendants here wish to move to dismiss
25   the new action.  As you may have noted from my
```

1    individual practice rules, I don't have any pre-motion

2    conference requirements if lawyers wish to make a

3    motion in good faith.  So I'm going to permit the

4    motion because that is how I do things.  What I would

5    like to do, and I'll come back to this in a moment, is

6    to get a briefing schedule in place for that motion.

7             The defendants have also asked to have

8    discovery stayed.  What I'm going to do actually is

9    grant a partial stay.  I want the parties to exchange

10   their requests for documents and their responses to

11   those requests, but as to any interrogatories or

12   depositions, I am going to hold off on those.  Those

13   will be stayed until the motion is decided.

14            Let me back up first of all and talk to you

15   about a briefing schedule on the motion to dismiss this

16   action.  I'm open to have the defendants tell me how

17   long they wish before they're in a position to submit

18   their papers.

19            MR. PRESSER:  Your Honor, we would request

20   sixty days to submit that motion to dismiss.  The

21   reason for the somewhat lengthy period there is

22   obviously the two holidays.

23            THE COURT:  Yeah, I was going to say, that

24   was not what I was expecting to hear, but go ahead.

25            MR. PRESSER:  There are a number of holidays

```
 1   between now and that sixty-day period, including

 2   Thanksgiving, which also includes Hanukkah this year,

 3   and then the Christmas and New Year's holidays.  So

 4   we're requesting sixty days.  We'll be getting it in

 5   just after the New Year, and we'll give defendants

 6   however long they wish for their response.  Sorry,

 7   plaintiffs for their response.

 8              THE COURT:  Do plaintiffs want to be heard?

 9              MR. SUGARMAN:  Yes, your Honor.  That to us

10   is much too long.  I mean, this complaint has already

11   been served, and I would suggest that thirty days is

12   more than sufficient.  Yes, there's a Thanksgiving

13   holiday in there but thirty days would bring it to

14   December 8th or thereabouts, which is a Sunday, so

15   December 9th.  And then we would file our answering

16   papers within two weeks.

17              Your Honor, may I just say that the overall

18   strategy of the defendants in this case has been just

19   to continue to delay.  Another summer has passed

20   without (ui), and we would like very much to attempt to

21   get a resolution in the district court before the next

22   summer passes.  So everything that we're going to say

23   today is really directed toward that goal, and we think

24   that the time frames we're going to propose are

25   reasonable, so this is the first test of that.
```

```
1              THE COURT:  All right.

2              MR. PRESSER:  Your Honor, obviously

3    defendants disagree with that position in the entirety.

4    At a conference before Judge Wexler, plaintiffs made

5    that same claim, claiming defendants were delaying this

6    action, and asked for an expedited schedule on certain

7    issues in that case.  Judge Wexler's response was, and

8    I'm quoting, "Wait a while.  It has taken you six

9    months to make an appeal from the inspection from one

10   to another, now you will rush everything."

11             The Town of Southampton is a municipal

12   entity.  They are not insured for this litigation.  So

13   every time something gets expedited in a time frame, it

14   costs the Town more.  In this case, a motion to dismiss

15   needs to be drafted, and I assume we'll have a further

16   discussion on requests and responses.  But this is not

17   so much the motion to dismiss but together, this is an

18   overwhelming task.

19             The complaint itself is incredibly lengthy

20   and accompanying the complaint are 2,000 pages of

21   exhibits.  It's not a small task to just do a little

22   bit of briefing on.  I would go down to 45 days in my

23   request if plaintiffs would agree to that.  But to say

24   we're somehow intentionally delaying this action -- it

25   took the plaintiffs quite some time to attempt to
```

1    exhaust their administrative remedies, and part of the

2    motion to dismiss will be that they still have not done

3    so.

4          MR. SUGARMAN:  Your Honor, if I may.  I'm

5    not going to go into the detail.  I refer your Honor to

6    a letter that we wrote to Judge Wexler on July 5th,

7    2012, which sets forth the reasons why it took so long

8    to do Southampton.  It's in significant part because we

9    were given inaccurate information by the Town's

10   lawyers.

11         But that aside, this complaint has been

12   pending -- it was filed on August 26th.  All of these

13   issues have been briefed before.  So to say that now,

14   other things have to be drafted, it just doesn't make

15   any sense.  If the Town of Southampton made the

16   decision not to get insurance, that was their decision,

17   and they have to live by it.

18         As your Honor has pointed out in her

19   opinion, plaintiffs' constitutional rights are at issue

20   here.  And to say that we need more time because we're

21   not insured and it's going to cost the Town of

22   Southampton money is just not, in our view, an answer

23   to that.

24         THE COURT:  All right, I understand both

25   sides' positions here.  And just so you're all aware --

```
1   I think you are aware, I deliberately asked that the
2   transcripts of all the proceedings before Judge Wexler
3   be given to me so I could follow this, since many of
4   the rulings per se are not in the ECF notations.  And
5   I've gone through all of those and I've gone through
6   the correspondence in the cases as well.
7              There's a lot to try to recall here but I
8   can promise you that at least the materials have been
9   gone through.  I am familiar with the arguments here
10  and I'm familiar with the positions of all the parties
11  who've been involved here.
12             Here's what we're going to do.  Even 45 days
13  puts us back in the middle literally of the Christmas
14  holidays.  So what I'm going to do is this.  The
15  defendants' papers will be due by January 3rd, and then
16  you tell me how long you want to respond.
17             MR. BUCHWEITZ:  January 17th, your Honor, two
18  weeks.
19             THE COURT:  That's fine.  January 17th
20  opposition, and then you've got until the 29th to get
21  any replies in.
22             MR. PRESSER:  Thank you, your Honor.
23             THE COURT:  And as I said, I'm not staying
24  document discovery.  So I'd like to get a schedule in
25  place quickly to serve the demands and to get those
```

1   responded to.  You certainly know what the scope of

2   documents consists of here, based on all of the prior

3   litigation that's gone on with this.

4                   MR. SUGARMAN:  Your Honor?

5                   THE COURT:  Yes.

6                   MR. SUGARMAN:  May is speak to that issue,

7   or I'll wait until -- I didn't know that you were

8   finished.

9                   THE COURT:  Well, it seems to me certainly

10  by the 25th of this month, everybody should be able to

11  get their demands out.  Again, we're only talking about

12  document demands here.  Anybody have an issue with

13  that?

14                  MR. BUCHWEITZ:  No, we're fine with that,

15  your Honor.

16                  MR. PRESSER:  No, your Honor, that's fine

17  for demands.

18                  THE COURT:  It would seem to me that a lot

19  of the paper here has already been produced but I'm not

20  sure what the composed demands themselves are going to

21  look like.  You've got until December 31st to respond.

22                  MR. PRESSER:  Your Honor, may I be heard on

23  that?

24                  THE COURT:  Go ahead.

25                  MR. PRESSER:  Before the Town was dismissed

1   from this case, we had begun the discovery process,

2   including the ESI process.  So I'm not going to deny a

3   good portion of our work has begun.  We have, or I

4   should say the Town has -- it's not in my firm's

5   possession yet -- a hard drive which is believed to

6   have 30,000 ESI pieces on it that need to be reviewed

7   by my firm, first for relevance, then again for

8   privilege.

9            In addition, we need to review the discovery

10  that has gone on in the other actions thus far.  I

11  mean, we stopped working on the case.  We were

12  dismissed from the case.  Everyone else has moved

13  forward over those nine months with discovery.  We need

14  ample opportunity to go through all that, to raise our

15  objections, and it can't possibly be done by December

16  31st.  That hard drive perhaps could be done.  We need

17  to get new contracts with the vendor we hired to do it

18  and get the ball rolling.

19            THE COURT:  Let me stop you for a minute.

20  Why would you potentially be doing two separate

21  reviews, one for relevance and a separate one for

22  privilege.  That makes no sense to me at all.

23            MR. PRESSER:  Well, I don't mean two

24  completely separate reviews in that sense.  That is not

25  the impression I meant to give, just that they're being

1  reviewed for two different purposes.  It's sort of a

2  step and a half, not a full two steps.  And I have to

3  work with the vendor on how that's going to happen, if

4  we can continue to use that vendor, which I hope we

5  can.

6          This is a substantial undertaking.  In

7  addition, I'm sure the new requests, the new demands

8  that are going to come out are going to widen the scope

9  greatly because they're going to include the

10 plaintiffs' additional efforts to exhaust their

11 administrative remedies and all the additional events

12 that have gone on in that time period, which even if

13 that's another 15,000 ESI pieces --

14          When all is said and done, my firm is going

15 to have to look at 100,000 pieces of paper at municipal

16 expense by December 31st.  I don't think it's feasible,

17 much less reasonable.  I don't think it can be done in

18 that time period on a municipal budget.  We have cited

19 some cases saying that with a motion to dismiss

20 pending, for a municipality and the taxpayer to bear

21 this expense, when even if some of the claims are

22 dismissed, the Town and taxpayers will be saved that

23 burden, that's a significant consideration.

24          THE COURT:  I understand that, and it is a

25 consideration that I've taken into account.  What I'm

1  going to have you do is the following, and paper

2  discovery is going forward, period.  At this juncture -

3  - and why any municipality should be looking at in

4  excess of 100,000 documents in this case, to me, with

5  regard to the obligations of counsel on both sides to

6  confer and to apply some principles of proportionality

7  here with regard to production --

8          Today is Friday.  I'm giving you folks until

9  next Friday, particularly for counsel for the Town of

10 Southampton and plaintiffs' counsel, to have a good

11 faith -- to what extent and time it takes between now

12 and next Friday, to try to narrow the scope of what

13 this is ESI production is going to be, all right?

14         MR. SUGARMAN:  Your Honor --

15         THE COURT:  Because if we get to a point

16 that the Town still believes that this is unreasonable,

17 then we're going to start talking about cost sharing

18 for the production, all right, and we'll deal that as I

19 need to deal with it.  But I expect the parties to have

20 a heart to heart on this between now and next Friday

21 and try to narrow the scope of what needs -- absolutely

22 needs to be provided here to the plaintiffs in order

23 for them to move forward.

24         And then I want a report back in writing as

25 to where you are as of the following Monday, which

```
1   would be -- let me just make sure of the date right

2   here.  That will be the 18th, all right?

3               MR. SUGARMAN:  Your Honor.

4               THE COURT:  Yes, counsel.

5               MR. SUGARMAN:  What I just wanted to point

6   out is, on February 1, 2013, Mr. Guido of the Jaspan

7   firm wrote you a letter on behalf of all counsel,

8   requesting a three-week extension of the then discovery

9   process, pointing out that the then deadline was

10  unreasonable but that exchange of letters had been

11  taking place, collecting and reviewing internal

12  documents.  All counsel held a productive meet and

13  confer to discuss the statute.  All counsel agreed that

14  the February 7 date was not feasible and requested a

15  three-week extension.

16              THE COURT:  I get that.

17              MR. SUGARMAN:  So --

18              THE COURT:  And then on February 4th, Judge

19  Wexler deemed them out of the case.

20              MR. SUGARMAN:  I understand that.  But what

21  Southampton agreed to at that time was that they're

22  going to get everything done in three weeks.  They were

23  out, now they're back in.  So why is now Southampton's

24  counsel saying this is impossible, when then they said,

25  we are far along and we need only three weeks.
```

1          THE COURT:  Okay.

2          MR. SUGARMAN:  All I'm saying is, your

3   schedule that you proposed is even more than what they

4   and we all requested.  So it has a hollow ring,

5   frankly --

6          THE COURT:  I understand that.

7          MR. SUGARMAN:  -- for them to say now

8   something much different than they said then.  And I

9   realize -- and I'll address this at the time you want

10  me to -- there are added parties.  The ZBA is added and

11  -- but with respect to the non-ZBA documents, they said

12  three weeks on February 1st and now they're saying much

13  different.

14          THE COURT:  Okay.  All the more reason why

15  everybody is going to comply with their obligations

16  under Rule 37.3 and you're going to talk to each other.

17  You're going to attempt to work this out and you've got

18  until next Friday to do so.  And if you can't, then

19  I'll take it from there, all right?

20          MR. SUGARMAN:  Thank you.

21          THE COURT:  But as I said, I want something

22  in writing from you by the 18th as to where things

23  stand.  Meanwhile, that December 31st date remains in

24  place, okay?

25          That brings me over to the Verizon action

```
 1   against the municipal defendants and the original

 2   action by the EEEA against the municipal defendants.

 3   First of all, I'd like to just have some confirmation -

 4   - please forgive me but without a lot of colloquy.  I

 5   just want an answer.  Has anything changed since the

 6   findings of fact and conclusions of law were submitted

 7   to Judge Wexler, from the plaintiffs' perspective?

 8              MS. WEISGERBER:  No, your Honor.

 9              THE COURT:  All right.  How about from

10   defendants?

11              MR. SOKOLOV:  No, your Honor.

12              THE COURT:  Okay.  It was suggested to me at

13   the last conference that I might want to consider

14   rendering a decision based solely on the paper

15   submissions, or the alternative obviously was to

16   proceed with a bench trial, particularly directed to

17   the question of who has the authority to attach the

18   laches as Judge Wexler laid out.

19              I would like to know, has anybody's position

20   changed since the last conference?

21              MS. WEISGERBER:  No, your Honor.

22              MR. SOKOLOV:  No, your Honor.

23              THE COURT:  And your position, plaintiffs,

24   is you would like the bench trial, correct?

25              MS. WEISGERBER:  We believe that it could be
```

1    decided on the papers.

2              THE COURT:  Okay, all right.

3              What about the defendants?

4              MR. SOKOLOV:  We believe even stronger than

5    at the last conference that it could be decided on the

6    papers.

7              THE COURT:  Then since everybody is in

8    agreement, that's what I will do.

9              I'm also aware that there's a motion pending

10   by the municipal defendants to strike the amicus brief,

11   and I will address that in due course, in conjunction

12   with reviewing the issues that I now will handle based

13   solely on the submissions.

14             With regard to these two actions, I would

15   like again briefly from each party, what is the status

16   of paper discovery in these two actions?

17             MR. BUCHWEITZ:  As to Westhampton Beach and

18   Quag, we believe we're done.

19             THE COURT:  Okay.

20             MR. BUCHWEITZ:  We've resolved the last of

21   the disputes with them in the interim period.

22             THE COURT:  Quag I know had gotten an

23   outside vendor to assist with its ESI.  At least with

24   the representations were made at the last conference, I

25   expected that that issue would have been resolved.  So

1    that leaves Southampton at this point, correct?  Well,

2    Southampton is out of that original packaging.

3              MR. BUCHWEITZ:  Correct.

4              THE COURT:  All right.

5              MR. DORFMAN:  Judge, that's not exactly the

6    case with respect to plaintiffs' production to

7    Westhampton Beach.

8              THE COURT:  Okay.

9              MR. DORFMAN:  Some months ago, we raised a

10   number of issues with their privilege logs and

11   specifically with certain categories of documents that

12   were withheld on account of privilege.  I'm not sure

13   that that issue is exactly ripe for the Court today.

14             THE COURT:  Okay.

15             MR. DORFMAN:  I'm sure we could discuss that

16   further before there's a need for a motion.  But there

17   might very soon be a need for a motion on the issue of

18   privilege.

19             THE COURT:  All right.  Well, here's what

20   I'm --

21             MS. DeJONG:  I'm sorry.  Quag would join

22   with the --

23             THE COURT:  Okay.  Here's what I want you to

24   do.  You take the next two weeks and you have a

25   conversation, all of you together on this issue.  If

1   it's not resolved, then I'm going to give you a

2   deadline to file any letter motions directed to

3   compelling the production or issuing a protective

4   order.

5          MR. BUCHWEITZ:  Your Honor, that's fine.  I

6   would just point out that we responded to their last

7   request on this with a supplemental privilege log and a

8   response on May 14th and haven't heard anything from

9   them until today.

10         THE COURT:  Okay.  Well, you're all going to

11   have a lot to talk about.

12         Any motions for court intervention on these

13   issues have to be filed by December 4th, all right?

14   Keep in mind two things:  One, on letter motions,

15   you're limited to three pages, unless you're filing in

16   conjunction with Rule 37.1.  It sounds to me like these

17   issues have to do more with the privilege log issues

18   than with regard to any responses per se to a

19   particular interrogatory or particular document

20   request.

21         If that's not the case and if this is

22   something you're directing to a specific interrogatory

23   response or document response, then I expect you to

24   follow Rule 37.1 in the way you pose that to the Court.

25   And for that purpose, if that's what we're down to,

1  then I will raise the three-page limitation because

2  you'll need to take up more space than that just

3  getting through some of these.  Remember, 37.1 says you

4  state the request that was made verbatim.  Underneath

5  that, you state the response that was made verbatim.

6  And then underneath that, you give me your objections

7  and what requests for relief you're seeking from me,

8  all right?

9           MS. WEISGERBER:  Your Honor, would you like

10  an update on discovery in the Verizon action as well?

11           THE COURT:  Yes, please.

12           MR. BUCHWEITZ:  I'm sorry.  Before you

13  continue, just so I'm clear, is the Court saying that

14  if we are not raising issues with specific requests,

15  then we'll be limited to three pages?

16           THE COURT:  Correct.

17           MR. BUCHWEITZ:  Thank you.  I apologize.

18           THE COURT:  As I said, keep in mind you have

19  to put a certification up front to the papers, which

20  everybody seems to be forgetful of.  A certification in

21  compliance with Rule 37.3, and you need to tell me how

22  you complied.  Part of that method of compliance better

23  include confirmation to me that you actually spoke to

24  each other in a good faith attempt to resolve these.

25           Go ahead, counsel.

1           MS. WEISGERBER:  With respect to Westhampton

2    Beach and Quash, Verizon and I believe LIPA as well

3    believe that all written and document discovery is

4    complete.  We've made our productions, we've exchanged

5    interrogatories, and we think that is all complete in

6    that action.

7           With respect to Southampton, we exchanged

8    interrogatories and responses to interrogatories.

9    Everything had moved along.  As Mr. Sugarman reported,

10   we were ready to make productions shortly after the

11   February conference with Judge Wexler.  Verizon and

12   LIPA can produce to Southampton at any time.  We've

13   completed our review of documents.  It's simply burning

14   the disk for them.

15           THE COURT:  That's fine.

16           MS. WEISGERBER:  We have not received

17   documents from Southampton yet, though.

18           THE COURT:  Okay.  Let me hear about that.

19           MR. PRESSER:  My understanding from Judge

20   Wexler's ruling is that Southampton -- that case was

21   stayed as against Southampton, which is --

22           THE COURT:  I read the ruling the same way,

23   frankly.  You're not disputing that, I assume, anyway,

24   right?

25           MS. WEISGERBER:  No, we're certainly not

1    disputing that.

2                THE COURT:  Okay.

3                MS. WEISGERBER:  But now that the EEEA has

4    refiled its complaint, our understanding is that the

5    case is no longer stayed.  We think all three cases

6    should proceed on the same track but with Southampton,

7    there is the outstanding document discovery issue.

8                THE COURT:  I guess the question becomes, in

9    the -- never mind, I'll withdraw that.  I'd like to

10   keep these on the same track.

11               MR. PRESSER:  I understand the benefit of

12   keeping these on the same track.  My concern is that it

13   seriously and significantly sort of penalizes

14   Southampton in its ability to have the same time and

15   deliberation in doing this that all the other parties

16   have had over the last nine months.  Disputes have been

17   raised, letters have gone back and forth.  Some

18   disputes have been resolved.  Privilege logs have been

19   made and then supplemented.  And we're being asked to

20   accomplish the same thing in roughly a sixth of the

21   time period.

22               THE COURT:  Well, I appreciate your

23   argument.  Also, counsel, this was stayed, it wasn't

24   dismissed with regard to these other claims.

25               MR. PRESSER:  I agree, your Honor.

```
 1                THE COURT:  It's not like there's any
 2    surprise that this is coming back at this point, all
 3    right?  The reason that I wanted you to have this meet
 4    and confer with the plaintiffs in particular, to try to
 5    narrow the focus here and figure out what it's going to
 6    take to comply with what you're being asked to do, and
 7    why I wanted the report back is, I'll make a
 8    determination at that point.
 9                MR. PRESSER:  Fair enough, your Honor.
10                THE COURT:  If it's impossible, and there
11    had better be some way to show me that, for the Town to
12    comply, we may be doing a rolling production at that
13    point, we may do a number of things.  But I want the
14    parties to sit down and try to work this out before you
15    get me involved again, all right?
16                MR. PRESSER:  Fair enough, your Honor.
17                THE COURT:  All right.
18                MS. WEISGERBER:  Your Honor, just one point.
19                THE COURT:  Sure.
20                MS. WEISGERBER:  With respect to Verizon and
21    LIPA, there were not an innumerable number of documents
22    that were being requested and produced by both sides,
23    and we were able to complete our document discovery
24    with Westhampton Beach and Quag.  Southampton and LIPA
25    and Verizon had agreed upon -- we had run all the
```

```
1   searches.  Everybody knew the number of documents that
2   each search term that Verizon and LIPA gave brought up
3   and we knew how many documents Southampton's search
4   terms brought up.  We were in agreement on all of that
5   back in February.
6               THE COURT:  All right.
7               MS. WEISGERBER:  If you would like us to
8   meet and confer, we can --
9               THE COURT:  Who were you dealing with at
10  that time?
11              MS. WEISGERBER:  -- but we just don't -- our
12  scope -- we're going to still produce the documents
13  that we agreed upon back then.
14              THE COURT:  All right.
15              MS. WEISGERBER:  So we don't necessarily
16  believe it's necessary to minimize or to decrease the
17  scope of the production with respect to --
18              THE COURT:  I'm not asking you to.  The only
19  people I asked to do that for are the EEEA plaintiffs.
20              MS. WEISGERBER:  Okay.  I was just
21  clarifying.
22              THE COURT:  Okay?
23              MS. WEISGERBER:  Thank you.
24              THE COURT:  Okay.  The paper discovery in
25  these cases is going to be concluded.  I want it
```

1   concluded and I'm not staying it.  But I am staying

2   depositions in the case once again, until these other

3   issues are resolved.

4           Let me just see if there's anything.  At

5   this point, there was a motion to compel pending

6   regarding Quag's production.  That was the E191.  At

7   this point, I'm deeming that moot on two counts.  I now

8   know and have confirmation that the production was

9   completed.  Also, the other half of the motion with

10  regard to depositions is moot at this point because I'm

11  staying the depositions.

12          Unless there's something I missed there, Ms.

13  DeJong.

14          MS. DeJONG:  No, I don't believe so.

15          THE COURT:  All right.  Now comes the moment

16  I'm holding the breath on, and that is, I'm going to

17  allow each of you to bring up anything else you want to

18  address today, all right?

19          Let me start with plaintiffs's counsel.

20          MR. SUGARMAN:  Only one request, your Honor.

21          THE COURT:  Sure.

22          MR. SUGARMAN:  I think it would be useful

23  and we would request that there be another conference

24  like this the week of January 6th.  By that time, much

25  will have been done, and we would like very much to

1   come back and do some longer-range planning, both for

2   depositions, a pretrial order and a trial date.  So

3   that's my request.

4          THE COURT:  All right.  The only thing I

5   could tell you about that -- I mean, taking these cases

6   separately for the moment, I cannot guarantee you in

7   any way I'm going to have a decision on the pending

8   submissions by January 6th.  If that's the case, I'm not

9   going to have a schedule -- be prepared to put up a

10   schedule for the rest of the case until that is

11   resolved.

12          I would be happy to have a conference just

13   to make sure that I don't have any issues with people

14   completing the paper discovery, in particular, that

15   I've outlined, and we can do that certainly I think by

16   telephone, as opposed to bringing everybody in here

17   again.  But I'm happy to do that.  I will have put

18   something else up in the schedule anyway, just to make

19   sure that everybody is covered and there are no motions

20   to be made about productions at this point, all right?

21   So we'll take care of that in just a moment.

22          What about LIPA and Verizon?

23          MS. WEISGERBER:  No other issues.

24          THE COURT:  All right.

25          MR. MURDOCK:  Nothing, your Honor.

```
1              THE COURT:  Let me go over to the defendants
2    then.  Mr. Sokolov?
3              MR. SOKOLOV:  We have no issues.  I just
4    want to, if I can, get clarification on the status of
5    JPO, Jewish People Opposed to (ui).  My understanding
6    is they initially moved to intervene in our case.
7    Judge Wexler denied that.  That's on appeal in the
8    Second Circuit.  Now, a new lawsuit was brought against
9    Southampton, which is consolidated back with us, and
10   there's a motion pending there.
11             Am I correct that between yourself and the
12   Second Circuit, whoever decides their issue first will
13   bind everybody else?
14             THE COURT:  I suspect if I reach a decision,
15   depending on where it goes, one side or the other may
16   be up in the Second Circuit.  I'm not sure.  I don't
17   think I can answer that any better than that right now,
18   all right?
19             MR. SOKOLOV:  Nothing else at this point.
20             THE COURT:  Okay.  Ms. DeJong?
21             MS. DeJONG:  Your Honor, we don't have
22   anything further.
23             THE COURT:  Okay.  Let's see, where am I
24   here?  The Town of Southampton.
25             MR. PRESSER:  We have nothing further, your
```

1    Honor.

2                THE COURT:  Mr. Presser, forgive me.

3                MR. PRESSER:  No worries, your Honor.  We

4    have nothing further.

5                THE COURT:  Okay.  Have I covered everybody

6    then?  Yes?  Good.

7                We'll put all of this into an order.  It

8    will go up sometime within the next day or two.  While

9    I have you, let me at least set up this telephone

10   conference, all right?  I'd like to put this on for

11   January 7th at 11:30, if that works for everyone.  Could

12   you check your calendars?

13               MR. SUGARMAN:  That's okay with everyone at

14   this table.

15               THE COURT:  Okay.

16               MR. SOKOLOV:  That's good for the

17   defendants, too.

18               THE COURT:  All right.

19               MR. SOKOLOV:  Is there a standard protocol,

20   your Honor, as to who sets up the conference call?

21               THE COURT:  I usually ask plaintiffs'

22   counsel to do these.  What I'll ask you to do is get an

23   outside telephone service operator, so that everybody

24   here can be heard on the call, all right?

25               MR. BUCHWEITZ:  We have our own -- I have a

1    conference number we can use.

2              THE COURT:  Good.  One other thing occurs to

3    me, and I would just like to address this while

4    everybody is here.  Based on what I get back on the 18th

5    with regard to the production for Southampton and the

6    demands made by the EEEA plaintiffs, if I want to take

7    some action to have a further conversation with those

8    parties, does anyone mind from the rest of the group if

9    I do it just with those parties, or do you all want to

10   be involved in the conversation?

11             MS. DeJONG:  I don't mind.

12             MR. SOKOLOV:  I don't mind, either.

13             MR. SOKOLOV:  Verizon and LIPA are okay with

14   that as well.

15             THE COURT:  All right.  So if I think I need

16   to address this when I get that status update, I may

17   just get counsel for the plaintiffs and Southampton's

18   counsel on the phone, all right?  Does that work?

19             MR. BUCHWEITZ:  Yes.

20             THE COURT:  All right, very good.  Let's

21   just say I'll be optimistic and say to you, if I don't

22   talk to you between now and the holidays, I hope

23   everybody, whatever you're celebrating, has a good one.

24   There's an awful lot going on in the world that the

25   rest of us have to be grateful that we're not involved

1    in it, such as the Philippines this morning.  So in

2    that spirit, I wish you all happy holiday and I'll

3    speak to you in January.

4              MR. PRESSER:  Thank you, your Honor.  You as

5    well.

6                        * * * * * * * * *

```
 1

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18        I certify that the foregoing is a correct

19   transcript from the electronic sound recording of the

20   proceedings in the above-entitled matter.

21

22

23

24

25   ELIZABETH BARRON                    November 22, 2013
```