```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2

 3   ------------------------------------X
     EAST END ERUV ASSOCIATION,         :
 4                                       :   13-CV-4810 (AKT)
                         Plaintiff,      :
 5                                       :
                    v.                   :   100 Federal Plaza
 6                                       :   Central Islip, New York
     TOWN OF SOUTHAMPTON,                :
 7                                       :   January 7, 2014
                         Defendants.     :
 8   ------------------------------------X
     EAST END ERUV ASSOCIATION,         :
 9                                       :   11-CV-213 (AKT)
                         Plaintiff,      :
10                                       :
                    v.                   :          FILED
11                                       :          CLERK
     THE VILLAGE OF WESTHAMPTON BEACH,   :
12   et al.,                             :       2/19/2014
                                         :
13                       Defendants.     :    U.S. DISTRICT COURT
     ------------------------------------X  EASTERN DISTRICT OF NEW YORK
14   VERIZON NEW YORK INC., et al.,      :       LONG ISLAND OFFICE
                                         :   11-CV-252 (AKT)
15                       Plaintiffs,     :
                                         :
16                  v.                   :
                                         :
17   THE VILLAGE OF WESTHAMPTON BEACH,   :
     et al.,                             :
18                                       :
                         Defendants.     :
19   ------------------------------------X

20           TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONIC
                        STATUS CONFERENCE
21         BEFORE THE HONORABLE A. KATHERINE TOMLINSON
                  UNITED STATES MAGISTRATE JUDGE
22

23

24

25                              (Appearances on next page.)


     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service
```

```
 1                                                                  2

 2

 3   APPEARANCES:

 4   For the Plaintiffs:         YEHUDAH L. BUCHWEITZ, ESQ.
                                 ROBERT SUGARMAN, ESQ.
 5                               JESSIE MISHKIN, ESQ.
                                 Weil, Gotshal & Manges, LLP
 6                               767 Fifth Avenue
                                 New York, New York 10153

 7

 8   For Defendant/Verizon:      ERICA WEISGERBER, ESQ.
                                 Debevoise & Plimpton LLP
 9                               919 Third Avenue
                                 New York, New York 10022

10

11   For Defendant/Village of    LEO DORFMAN, ESQ.
       Westhampton:              Sokoloff Stern LLP
12                               179 Westbury Avenue
                                 Carle Place, New York 11514

13

14   For Defendant/LIPA:         ZACHARY MURDOCK, ESQ.
                                 Lazer, Aptheker, Rosella &
15                                 Yedid, P.C.
                                 225 Old Country Road
16                               Melville, New York 11747-2712

17

18   For Defendant/Southampton  ROBERT GUIDO, ESQ.
       Zoning Board of Appeals:  Jaspan Schlesinger
                                 300 Garden City Plaza
19                               Garden City, New York 11530

20

21   For Defendant/Village of    JOSHUA S. SHTEIERMAN, ESQ.
       Quogue:                   Devitt Spellman Barrett, LLP
                                 50 Route 111
22                               Smithtown, New York 11788

23

24   Court Transcriber:          SHARI RIEMER
                                 TypeWrite Word Processing Service
25                               211 N Milton Road
                                 Saratoga Springs, New York  12866
```

3

1  (Proceedings began at 11:44 a.m.)

2         THE CLERK: Calling Civil Cases 13-4810, East End

3  Eruv Association, Inc. v. Town of Southampton and Civil Case

4  11-213, East End Eruv Association v. Village of Westhampton

5  Beach and Civil Case 11-252, Verizon v. Village of Westhampton

6  Beach, et al.

7         Please state your appearance for the record.

8         MR. SUGARMAN:  Weil, Gotshal & Manges for the East

9  End Eruv Association and the individual plaintiffs, Robert

10 Sugarman, Yehudah Buchweitz and Jessie Mishkin, Your Honor.

11 Good morning.

12        THE COURT: Good morning.

13        MS. WEISGERBER:  Erica Weisgerber, Debevoise &

14 Plimpton for Verizon New York.  Good morning.

15        THE COURT: Good morning.

16        MR. MURDOCK: Good morning, Your Honor.  Zachary

17 Murdock from Lazer, Aptheker, Rosella & Yedid for Long Island

18 Power Authority.

19        MR. GUIDO:  Good morning, Your Honor.  For defendant

20 Town of Southampton and Southampton Zoning Board of Appeals

21 Jaspan Schlesinger by Robert Guido and Seth Presser.

22        THE COURT: Good morning.

23        MALE VOICE:  Good morning, Judge.  For the Village

24 of Westhampton defendant by [inaudible] McKenna.

25        MR. SHTEIERMAN:  Good morning, Your Honor.  Joshua

4

1   Shteierman from Devitt Spellman Barrett for the Village of

2   Quogue.

3            THE COURT: That's I think everyone; is that correct?

4   Anybody that we missed?  All right.

5            MR. SUGARMAN: I don't think so, Your Honor.

6            THE COURT: Counsel from Sokoloff Stern just so you

7   know we're having a little trouble -- you're a little garbled.

8   I'm not sure if you're on a cell phone or on a land line but

9   hopefully that won't be an issue.

10            We have some ground to cover today and I'd like to

11   get over a number of things including some questions I have

12   and some determinations I'm going to make here in following up

13   on the status reports that were filed as well as some other

14   issues that are still pending.  So let me get started.  At the

15   end of this I'll give everybody an opportunity to speak up if

16   there's anything else they want to address today.

17            First of all, going to the issue of the search

18   protocol and deadlines that were set out in our meeting, last

19   meeting in November on November 8th, one of the curiosities I

20   had and I'm going to ask counsel for Southampton to respond to

21   this if you would.  It appears that out of the production of

22   the first 10,000, and we're not up yet to the deadline for the

23   second 10,000, but as to the first 10,000 set of materials

24   that were produced only 560 I take it actually went in the

25   production to the plaintiffs which looks to be about a five

1  percent culling here.  I'm just curious, and I was hoping that

2  you could shed some light on why that number is at that low

3  figure.

4          MR. GUIDO: I think that number is at a low figure

5  because the search terms are just a little bit too broad and

6  the custodians may be a little bit too broad.

7          By the way, Your Honor, these are the two search

8  terms.  That 10,000 documents represents a review of two

9  search terms, the first being Eruv and the second being Leches

10  [Ph.].  It includes a review of the documents that came up

11  with hits from those search terms and what are commonly known

12  as those documents, family members and there are duplicates.

13  So I won't say that every document reviewed came from only

14  those two search terms but that was the universe we were

15  focusing on and I would have expected those documents to have

16  the highest degree of return.  Those search terms to have the

17  highest degree of return because they seemed so right on point

18  but they pulled up a wide variety of irrelevant documents.

19          THE COURT: All right.  Well, we still have the next

20  two deliveries to be made.  You indicated in your letter,

21  Counsel, responding to plaintiff's letter that the -- at the

22  January 31st deadline the Town will have completed the review

23  of nearly 32,000 pieces of ESI and made disclosure of non

24  privileged responsive documents.  It says at that time the

25  Town's vendor will be able to advise in reasonable detail as

6

1   to which search terms will be effective and which terms were

2   ineffective.  The vendor will also be able to identify which

3   custodians produced meaningful results and which custodians

4   were not worth reviewing.  This information is vital before

5   any conversation can be had on narrowing search terms or

6   custodians or any other set of discovery such as for other

7   temporal periods.

8           So here's what I'm going to direct the manner in

9   which we proceed here.  By February the 5th I want a report in

10  writing from the vendor in conjunction with counsel for the

11  Town laying out exactly what you indicated here, which terms,

12  which search terms were effective, which were ineffective and

13  which custodians produced meaningful results and which were

14  not worth reviewing.

15          Once that has been produced, and obviously you'll

16  file that on ECF so that everybody else in the case can take a

17  look at it as well, once that occurs then I'm directing

18  counsel to have a further meet and confer between February 5th

19  and February 13th.  I want that meet and confer to consist of

20  further discussions between you and among you as to the

21  narrowing of the search terms and the custodians.  I want that

22  issue resolved.

23          If it's not resolved by February 13th then the Town

24  of Southampton is free to move for a protective order but

25  that's to be done by February 17th.  And the same thing, I want

1  that done by letter motion so that we can try to expedite a

2  resolution.

3          And following along the normal procedure for letter

4  motions, once that gets filed opposing counsel has three

5  business days to file any opposition.

6          Now, moving onto the issue of the 70 gigabytes that

7  the Town has been using the vendor to facilitate as well,

8  first of all I'm trying to understand -- it's now January 7th.

9  When we discussed what was going to happen with this portion

10 of the discovery on November 8th, which is just about nine

11 weeks ago now, there was supposed to have been a protocol put

12 in place and presumably the production started.  I don't have

13 any indication here that any of that was done and so I'd like

14 a response again from counsel for the Town as to where things

15 are with that 70 gigabyte review of non email.

16         MR. GUIDO: The 70 gigabytes of non email ESI has

17 been culled by the vendor to remove program files, Windows

18 files, things that are not documents you would expect to have

19 information in them other than to allow you to run a program

20 on your computer.  It has also removed duplicates from the

21 production and that has reduced the amount of data there from

22 70 gigabytes to approximately 60 gigabytes.  So a lot of data

23 was culled out of it.

24         The next step in that process will be to apply the

25 agreed upon search terms to that 60 gigabytes and see what

8

1  documents come back based on those search terms but for the

2  same reason we want to narrow the search terms for other

3  temporal periods we'd like to narrow them for this 60 gig so

4  we get something better than a five percent return.

5       THE COURT: Let me ask this question. You have --

6  obviously you're paying a professional vendor to go through

7  this exercise. Why in nine weeks are we only at the stage

8  where they've culled out a reduction of ten gigabytes and you

9  haven't proceeded from there? That's what I'm trying to get

10  at.

11       MR. GUIDO: It's not that -- okay. They're doing the

12  culling, the electronic culling, but we're doing the documents

13  themselves. We're the ones who are actually looking at each

14  piece of paper, reading the words on it and making reviews

15  thereof. We explained this to plaintiffs earlier that right

16  now we're doing the 32,000. If we could work faster than

17  we're currently working we would complete the 32,000 even

18  faster than we are now. Unfortunately we -- just as we came

19  through the 32,000 any faster we can't do more than that at

20  the same time and to do anything before the 32,000 is done

21  we'd need to be applying the same search terms, the same

22  formulas that are resulting in a poor a return rate, and that

23  just doesn't seem efficient to anyone. It just places an

24  enormous burden on the Town of reviewing vast quantities of

25  data that have been demonstrated in earlier productions to not

9

1  be particularly responsive.

2        THE COURT: So are the plaintiffs in agreement that

3  at the end of this production of the 32,000 that we've been

4  talking about that as I mentioned earlier I've already

5  directed you with regard to those documents to have a further

6  meet and confer to narrow the search terms and the custodians?

7  Are you prepared to apply the same rationale to this 70

8  gigabyte or now 60 gigabyte production?

9        MR. BUCHWEITZ: Your Honor, Yehudah Buchweitz for the

10  plaintiffs, Eruv Association, Individually.  When we were here

11  we agreed to extend the date for the review of the documents

12  from December 31 to the end of January.  It was based on an

13  understanding that after the review of the first bunch, the

14  10,000 we would each be in a better position to discuss search

15  terms and custodians and we had asked Southampton to come back

16  with a proposal on custodians.  We had asked them for a number

17  of other things as well.

18        I think on the 70 gig, Your Honor, I think that the

19  prior terms were negotiated extensively.  While they

20  apparently came back with a low hit ratio it's not clear to me

21  that it's not because it's duplicates which wouldn't mean that

22  it's actually the relevant documents but just [inaudible]

23  documents.  So I think that their vendor which could work in

24  parallel with counsel should at least run the prior search

25  terms on the remaining data and see what comes back and

10

1  provide us with a report on the number of documents.  If the

2  number of documents are massive -- and be duplicated against

3  the documents that were attached to the email.  If the

4  documents are massive then okay, then we can wait and we can

5  work on a reduced search term list.  But we don't see any

6  reason why that can't work in parallel.

7        MR. GUIDO: Your Honor --

8        THE COURT: Hold on.  Hold on one second.  Just so I

9  understand this.  You're telling me that you want them to do

10 this preliminary culling of the 60 gigabytes that are left

11 there just on those two search terms, Eruv and Leches?

12       MR. BUCHWEITZ:  No, Your Honor.  We agreed -- the

13 parties agreed in the context -- all parties agreed to a total

14 of 30 search terms each that they were going to propose and

15 then we negotiated them very specifically back and forth.

16 Southampton turned out to be 20 something search terms that we

17 agreed on.  This was back before Southampton was dismissed the

18 first time in early 2013.  Those were the terms that were

19 agreed on and those were the terms that resulted in the 32,000

20 documents.

21       I think that what I'm proposing, Your Honor, is that

22 those terms, the 20 something terms that we had agreed on

23 previously be run against this data, be de-duplicated against

24 the attachments to the emails because I suspect that the non

25 emailed documents will have many duplicates, the ones attached

1  to emails and then see what comes back.  And all of that can

2  be done without counsel for Southampton spending a minute.

3  That's all stuff that can be done by a vendor.  That's all,

4  you know, basically vendor function, and then we can get a

5  report from them on that and we can see whether or not those

6  should be reviewed now or can be reviewed or need to be

7  further culled.

8          THE COURT: Let me hear from counsel for the Town.

9          MR. GUIDO: Your Honor, we agree with that proposal.

10  We are happy to have our vendor report those functions and we

11  would get a report back based on those functions.  I'm not

12  saying we would agree to do whatever plaintiffs wanted at that

13  point but we would certainly be willing to meet and confer.  I

14  agree with Mr. Buchweitz that that would be good information

15  to have and would help us meet and confer and I'm happy to

16  have our vendor go down that path.

17          THE COURT: Do you have any sense at all from your

18  vendor in terms of how much time it took to do this original

19  culling to get you from the 70 gigabytes to the 60 gigabytes,

20  how long it might possibly take for example to run these 20

21  search terms or 20 plus search terms against that 60 gigabyte

22  production?

23          MR. GUIDO: I believe I could have that data, and I

24  haven't of course asked the vendor yet, but I believe I could

25  have that data by the middle of next week.  With that said, I

12

1  don't want to get in the vendor's way of our next production

2  to the plaintiffs which is scheduled to go out on the 15th.

3  But I believe we could have it by the beginning to the middle

4  of next week unless it gets in their way which I can't imagine

5  it would.

6          THE COURT: Okay.  That at least sounds reasonable to

7  me.  Frankly I don't see any reason why whatever results you

8  get shouldn't be at least shown right away to plaintiff's

9  counsel and then when you are sitting down to have your final

10 resolution as I've already directed you to do between the --

11 by the 13th of February why this can't be added to the mix to

12 try to get a resolution.  To me that seems reasonable.  Does

13 anybody have a problem with that?

14         MR. GUIDO: If the vendor can get me the information

15 that quickly, Your Honor, I believe we can finish it up by the

16 13th.  I will follow up with plaintiffs as soon as the vendor

17 gives me when they can get it by.  My fear is if they say we

18 can't get it to them until Friday the 10th, you know, we may

19 not have time to confer before the 13th.

20         THE COURT: Well, let me do this.  I want you to

21 confer with your vendor and then send me a one paragraph or a

22 couple of sentences in a letter on ECF telling me what the

23 vendors responded to you with their best estimate.  All right?

24         MR. GUIDO: Will do.

25         THE COURT: Once I see that and plaintiffs have seen

13

1    it we'll take up the issue at that point if there's going to

2    be a delay beyond what anybody is anticipating at this point.

3            All right.  Moving on, with regard to the issue of

4    discovery that the plaintiffs are seeking from the Town of

5    Southampton's Zoning Board of Appeals, I'm reserving a

6    determination on that issue and you will get a written

7    decision but that's under advisement for the moment.

8            There is a motion to compel outstanding with regard

9    to an assertion of privilege by the plaintiffs on grounds of

10    congregant cleric privilege and common interest doctrine

11    privilege.  Looking at this issue the defendants I know have

12    argued here that CPLR 4505 regarding cleric congregant

13    privilege does not apply in federal cases.  In cases that

14    arise under federal law privileges against disclosure are

15    governed by principles of federal law.  Here, federal common

16    law does recognize that cleric congregant privilege, and I

17    will refer you briefly to United States v. Mohanlal, M-O-H-A-

18    N-L-A-L, 867 F.Supp. 199.  That's a Southern District 1994

19    case which also relies In re: Grand Jury Investigation, 918

20    F.2d 374 (3d Cir. 1990).

21            If you also look at Tremmel v. The United States,

22    445 U.S. 40, a 1980 case from the Supreme Court and Cox v.

23    Miller, 296 F.3d 89.  That's a Second Circuit case from 2002

24    which says that congregants, cleric privilege applies for

25    communications made in confidence and for the purpose of

14

1    obtaining spiritual guidance.

2           So based on the review that we've done here, I

3    believe that the appropriate application here is to apply the

4    federal common law since this case arises under federal law.

5    However, that doesn't necessarily mean that all of the

6    documents claimed to be privileged necessary fall under that

7    privilege.  So -- and that's also up for review with regard to

8    the common interest privilege.

9           Before I can make a final determination on that

10   motion I'm directing the plaintiffs to produce the documents

11   that are at issue here for an in camera review immediately.  I

12   would like the documents as well as the privilege log which I

13   do not have and has obviously not been filed on ECF but I do

14   need that to work from as well.

15          I would like to know if the privilege log has been

16   prepared by the plaintiffs actually lists the specific

17   privileges being asserted for each of those documents

18   individually.

19          MR. BUCHWEITZ: Your Honor, it does.

20          THE COURT: So that should resolve the issue for me

21   then once I have a chance to look at that with the documents

22   and we will try our best to expedite that process as soon as

23   we get the material.

24          With regard to plaintiff's desire to have

25   depositions go forward in these cases, I know that Judge

1    Wexler previously stayed depositions pending the outcome of

2    the court's rulings in the Verizon LIPA action, specifically

3    here this issue of whether or not Verizon LIPA has authority

4    to attach the Leches.  I had previously stayed depositions in

5    CV-13-4810 pending the outcome of the motion to dismiss.

6              I understand the fervor on behalf of the plaintiffs.

7    What I will permit at this point is if it's your position,

8    which I assume it is from what you've put in the status

9    reports that you believe certain depositions can be taken now

10   I will allow you to make a submission on notice obviously on

11   ECF to tell me what specific deposition or depositions you

12   believe can be taken now that would not be impacted by the

13   motion to dismiss or the privilege rulings including the fact

14   as well that paper discovery is still going on.

15             I'm happy to get your lists.  You're going to have

16   to give me the arguments as to why those specific depositions

17   should be permitted to proceed in light of these other

18   circumstances.  The filing, if you wish to make one, is

19   limited to three pages as always and the defendants if in fact

20   that the material gets filed I'll give the defendants a week

21   after it's posted to file any opposition and I'll take a look

22   at it at that point.

23             I decline at this point to set a date for the

24   completion of discovery and for the trial.  That's just not

25   realistic in light of what's going on at the moment with

16

1  regard to discovery.

2         There is a pending motion to intervene in 13-4810.

3  I am denying that motion.  The written decision will issue

4  shortly explaining why.

5         I want to address for a moment the document

6  production in the Verizon LIPA case.  I know that Verizon and

7  LIPA have not received any documents from the Town of

8  Southampton because Judge Wexler previously stayed discovery

9  against the Town in that action.  I had previously directed

10 the parties to meet and confer regarding document production

11 in that case.  I'd like someone to tell me what happened as a

12 result of that meet and confer.

13        MR. PRESSER: Your Honor, this is Seth Presser from

14 the Town of Southampton.  We did meet and confer and we are

15 following the same schedule as the 13-CV-4810 case.  In fact,

16 all counsel were very reasonable in that we conferred not only

17 with counsel for Verizon and LIPA but also with counsel for

18 EEEA to come up with a plan of which search terms would be

19 reviewed first and that is how we ended up reviewing the two

20 search terms we started with.

21        So we filed a letter requesting approval from the

22 court of the same schedule that we had in 4810 and Your Honor

23 approved that schedule.

24        THE COURT: All right.  So that at least has been

25 addressed.

1          For my purposes that's what I intended to get

2   through today.  I will obviously at this point allow counsel

3   to tell me if there's anything else that they believe needs to

4   be addressed in each of these cases at the moment.  So let me

5   start with East End Eruv v. The Town of Southampton.  That's

6   the 13-4810 case.  Anything from the plaintiffs?

7          MR. BUCHWEITZ: Your Honor, you've addressed our

8   issues and the only thing that we would ask is to set another

9   day on the calendar if possible for another conference like

10   this given how helpful it's been.

11          THE COURT: I'm happy to do that.  Let me just also

12   say we are working feverishly on the motions that are

13   outstanding here.  Just in speaking to my colleagues and I'm

14   not quite sure, the filings, the civil filings on Long Island

15   are up significantly.  There isn't a judge here in this

16   courthouse at the moment who I don't think feels overwhelmed

17   by the workload.  Our case caseload hit the 600 active case

18   threshold within the past month.  So just so that everyone

19   understands here we're as they say dancing as fast as we can

20   and I understand the concerns the plaintiffs have asserted

21   here with respect to the rights of their clients and I'm fully

22   cognizant of that.  So you have my word that we will get these

23   things resolved as quicky as we possibly can.

24          MR. BUCHWEITZ: Thank you, Your Honor.  We appreciate

25   that.

18

1      MR. SUGARMAN:   Thank you, Your Honor.

2      MR. GUIDO:   Your Honor, the only other issue the

3  defendants have for that latest case, not so much an issue but

4  an apology.  I did misstate one fact in my letter to Your

5  Honor where I indicated that EEEA had not yet turned over any

6  documents to the defendants.  That was my personal mistake.

7  Apparently in the prior litigation at least some documents,

8  quite a few documents had been turned over.  The error was

9  brought to my attention by plaintiff's counsel and I am very

10 sorry for the misstatement.

11     THE COURT: All right.  I understand that actually

12 because I had put a note to myself that I thought that was not

13 accurate based on information we had regarding the other case

14 before the Town was dismissed out of it.  So I appreciate your

15 straightening out the record though.

16     How about in the East End Eruv v. The Village of

17 Westhampton Beach, et al., 11-213, anything there that anybody

18 needs to address?

19     MR. BUCHWEITZ:  No, Your Honor.  As far as the

20 plaintiffs are concerned everything is set and we'll get you

21 those documents for in camera review as soon as possible and

22 we'd ask the same thing to set another conference date.

23 Perhaps the second half of February makes sense.

24     THE COURT: Yes.  All right.  We'll that in just a

25 moment.

19

1          How about --

2          MR. DORFMAN: This is Leo Dorfman.

3          THE COURT: Yes.

4          MR. DORFMAN: This is Leo Dorfman, Your Honor.  I

5   just wanted to say that we have nothing to add.

6          THE COURT: Okay.  Anybody else?

7          MALE VOICE: Josh [inaudible] from [inaudible].  We

8   have nothing to add as well.

9          THE COURT: All right.  Let's see.  How about <u>Verizon</u>

10  <u>v. The Village of Westhampton Beach</u>, 11-252?

11         MS. WEISGERBER:  No outstanding issues, Your Honor.

12  This is Verizon.  We don't have any outstanding issues.

13         THE COURT: Okay.

14         MR. MURDOCH: None for us, Your Honor.

15         THE COURT: All right.

16         MALE VOICE:  Nothing for Westhampton Beach as well.

17         THE COURT: All right.  Very good.

18         MALE VOICE: [Inaudible]

19         THE COURT: Hold on just a second.  Let's take a look

20  at the calendar for the latter part of February.

21                   [Pause in proceedings.]

22         THE COURT: I am on trial those last two weeks in

23  February but I do have some time available on Friday, the 28th.

24  I'm just looking here.  Yes, I'm sorry, go ahead.

25         MR. BUCHWEITZ:  I was going to say that seems okay.

20

1          MR. GUIDO: That's fine with the defendant.

2          THE COURT: How is 10:30?  Does anybody have a

3    problem with 10:30 that morning?

4          MR. BUCHWEITZ: Not the plaintiffs, Your Honor.

5          MR. GUIDO: Defendant is available, Your Honor.

6          MS. WEISGERBER:  No issues for Verizon.

7          MR. MURDOCK:  No for LIPA.

8          MALE VOICE: [Inaudible] is available, Your Honor.

9          THE COURT: Did we catch everybody?  I didn't hear

10   anybody say that that's a problem so I'm going to put it on

11   for February 28th at 10:30 and we'll use the same call in

12   mechanism if that works for everyone.

13         Who set this up, by the way?

14         MALE VOICE: [Inaudible]

15         THE COURT: Would we be using the same call in

16   numbers again or would you need a new --

17         MR. BUCHWEITZ: Yes, that's fine.  We can use the

18   same one.

19         THE COURT: Very good.  We'll make a note of that as

20   well then.

21         We'll get an order put up in the next day or two

22   summarizing what we talked about today and you'll proceed

23   according to the guidelines that we discussed and the

24   directives that I've given you and then I'll speak to you on

25   the 28th of February.  All right.  Thank you all.  Have a good

21

1  rest of the day.

2         MR. GUIDO: Thank you, Your Honor.

3         MR. BUCHWEITZ: Thank you, Your Honor.

4  (Proceedings concluded at 12:15 p.m.)

5                    *  *  *  *  *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

22

1   I certify that the foregoing is a court transcript from

2 an electronic sound recording of the proceedings in the above-

3 entitled matter.

4

5               _____

6                 Shari Riemer

7 Dated:  February 17, 2014

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25