FILED
CLERK

3/18/2015

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------X
EAST END ERUV ASSOC., et al.,:
                              :
              Plaintiff,   :    11-CV-213 (AKT)
                              :
          V.               :    February 26, 2015
                              :
VILLAGE OF WESTHAMPTON BEACH,:    Central Islip, NY
et al.,                       :
              Defendant.   :
----------------------------X
VERIZON NEW YORK, INC.,       :
et al.,                       :
              Plaintiff,   :    11-CV-252 (AKT)
                              :
          V.               :
                              :
VILLAGE OF WESTHAMPTON BEACH,:
et al.,                       :
              Defendant.   :
----------------------------X
EAST END ERUV ASSOC., et al.,:
                              :
              Plaintiff,   :    13-CV-4810 (AKT)
                              :
          V.               :
                              :
THE TOWN OF SOUTHAMPTON,      :
et al.,                       :
              Defendant.   :
----------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE A. KATHLEEN TOMLINSON
UNITED STATES MAGISTRATE JUDGE

1

2

APPEARANCES:

3

For the Plaintiff:        ROBERT SUGARMAN, ESQ.

4                         YEHUDAH BUCHWEITZ, ESQ.
                          ERICA WEISGERBER, ESQ.

5                         ZACHARY MURDOCK, ESQ.

6  For the Defendant:     BRIAN SOKOLOFF, ESQ.
                          MAUREEN LICCIONE, ESQ.

7                         DAVID ARNSTEN, ESQ.
                          JOSH SHTEIERMAN, ESQ.

8

9  Audio Operator:

10

Court Transcriber:        ARIA SERVICES, INC.

11                         c/o Elizabeth Barron
                          102 Sparrow Ridge Road

12                         Carmel, NY 10512
                          (845) 260-1377

13

14

15

16

17

18

19

20

21

22

23

24

25  Proceedings recorded by electronic sound recording,
    transcript produced by transcription service

```
1              THE CLERK:  Calling cases 11-CV-213, East
2   End Eruv Association, Incorporated v. The Village of
3   Westhampton Beach, et al., 11-CV-252, Verizon New York,
4   Incorporated, et al. v. Village of Westhampton Beach,
5   et al., and 13-CV-4810, East End Eruv Association,
6   Incorporated, et al. v. The Town of Southampton, et al.
7              Please state your appearances for the
8   record.
9              MR. SUGARMAN: Good afternoon, your Honor.
10  Robert Sugarman and Yehudah Buchweitz for the East End
11  Eruv Association.
12             MS. WEISGERBER:  Erica Weisgerber, Debevoise
13  & Plimpton, for Verizon New York.  Good afternoon, your
14  Honor.
15             THE COURT:  Good afternoon.
16             MR. MURDOCK:  Zachary Murdock, Lazer
17  Aptheker Rosella & Yedid, for LIPA.
18             MR. SOKOLOFF:  Brian Sokoloff, Sokoloff
19  Stern LLP, for the Village of Westhampton Beach.
20             MS. LICCIONE:  Maureen Liccione, Jaspan
21  Schlesinger, for the Town of Southampton.
22             MR. ARNTSEN:  Good afternoon, your Honor.
23  David Arntsen and Josh Shteierman for the Village of
24  Quogue.
25             THE COURT:  Good afternoon to everybody.
```

1    It's been a while.  I decided that I would rather have

2    you in than try to have a phone conference with this

3    small army of attorneys.  Really, my primary matter I

4    want to deal with this afternoon is to give each of you

5    an opportunity to tell me where we're going with these

6    cases in light of the decisions -- both the published

7    decision in the Second Circuit from Judge Raggi, Jacobs

8    and Livingston and the other summary order that was

9    issued.

10              I really need to come to some resolution

11   here.  If the cases are continuing, we need to get the

12   rest of the schedule in place.  That's really what I

13   want to talk about today.  So let me start with

14   plaintiffs.

15              MR. SUGARMAN: Thank you, your Honor.  We'll

16   take the cases one by one.

17              THE COURT:  Whatever you wish.

18              MR. SUGARMAN: First, with respect to

19   Westhampton Beach, the decision of the Second Circuit

20   eliminates the second of the arguments that Westhampton

21   Beach had with respect to Eruv.  The first one was the

22   authority issue, which you decided adverse to

23   Westhampton Beach, and the second was the establishment

24   clause issue, which the Second Circuit has decided

25   adverse to Westhampton Beach.

```
1              So the plaintiffs have requested that you
2    rule on the plaintiffs' summary judgment motion on
3    their declaratory judgment claim and to dismiss the
4    affirmative defenses, all of which revolve around those
5    two issues.  So with respect to Westhampton Beach, the
6    case is ripe for a decision on summary judgment on the
7    plaintiffs' declaratory judgment claim and the
8    defendants' affirmative defenses.
9              That would leave in Westhampton Beach the
10   remainder of plaintiffs' claim, free exercise, 1893,
11   Rilupa (ph), tortious interference.  With respect to
12   those, there needs to be the completion of discovery.
13   Document discovery has been complete and depositions
14   need to be taken.  So that's the situation with respect
15   to Westhampton Beach.
16             With respect to Quogue, your Honor invited
17   the parties to answer your question as to whether you
18   had sufficient information to decide the issue of the
19   sign law in Quogue.  The parties briefed that by letter
20   and that is sub judice before your Honor.  So with
21   respect to Quogue, the sign law issue is ripe for your
22   decision.
23             That would leave -- let me add one thing to
24   that.  The Second Circuit's decision that it is not a
25   violation of the establishment clause takes one of the
```

1   Village of Quogue's arguments in support of their sign

2   law decision away because one of those arguments was --

3   and one of the bases of the Quogue Village board

4   decision that the leches (ph) violated the sign law was

5   the concern that any other decision would be a

6   violation of the establish clause.  Based on the Second

7   Circuit decision, that argument no longer holds water.

8           So with respect to Quogue, there is the

9   issue of the sign law and then there are the other

10  issues, same as Westhampton Beach, free exercise under

11  the First Amendment, 1983, Rilupa, et cetera.

12          With respect to Southampton, you dismissed

13  the claim with respect to the sign law of the Village

14  of Southampton -- sorry, the Town of Southampton, and

15  the plaintiffs have filed an Article 78 proceeding in

16  state court which is fully submitted to the supreme

17  court justice and we're awaiting a decision with

18  respect to that.  You stayed the remainder of that case

19  pending the decision on the resolution of that issue.

20          THE COURT:  Yes.

21          MR. SUGARMAN: What we would request -- and

22  to back up a second, you have stayed depositions in the

23  Quogue and Westhampton Beach cases.  So with respect to

24  the three in terms of discovery, this case is now in

25  its fifth year and we would --

1          THE COURT:  God help us all.

2          MR. SUGARMAN: At least we're all still here,

3     which is good news.  We would request that the stay in

4     Southampton be lifted and that we be allowed to proceed

5     with depositions in Westhampton Beach and Quogue, so

6     that we can move the case along and so that when your

7     Honor renders her decision in the Quogue sign law issue

8     and when the state court renders its decision on the

9     Southampton sign law, we will not, however many months

10    down the road, have to basically then start with the

11    discovery that we need on the other claims, and that

12    could be into the sixth year or the seventh year or who

13    knows.

14          So what we would urge is that we be given

15    the opportunity, in parallel with your decision on the

16    sign law and the state court decision on the

17    Southampton sign law, to move forward with whatever

18    depositions are necessary to put the other claims that

19    I'm enumerated into a situation where they can be

20    resolved, whether by motion or trial.

21          THE COURT:  All right.  Let me hear from the

22    defendants.

23          MR. SOKOLOFF:  First of all, there were two

24    bases for the affirmative defenses that we had here,

25    one of which your Honor adjudicated, and that's the

 1   state law authority issue.  The other was an

 2   establishment clause defense.

 3           As your Honor knows, the Second Circuit

 4   ruled in another case that it wouldn't violate the

 5   establishment clause, and I'm not foolish enough to

 6   tell you that we don't feel covered by that decision,

 7   regardless of whether we disagree with it.  So I'm

 8   prepared, with regard to the establishment clause

 9   affirmative defense or counterclaim, to withdraw those

10   claims on behalf of the Village of Westhampton Beach.

11           Your Honor has ruled on the state law issue

12   and denied our request to appeal immediately.  I

13   understand that.  In our view, what remains against

14   the Village of Westhampton Beach are some claims that

15   A) were not ripe when they were filed, and B) since

16   during the pendency of this litigation, the plaintiffs

17   have submitted documents to this Court telling the

18   Court that they have put up an Eruv and leches in the

19   Village of Westhampton Beach, the case is frivolous and

20   moot.  So it's not ripe, it's frivolous and it's moot.

21           Two of those go to the Court's subject

22   matter jurisdiction because if the case isn't ripe, the

23   Court shouldn't adjudicate the issues that the

24   plaintiff wants adjudicated.  Just for your Honor's

25   edification, there was a preliminary injunction hearing

1    as soon as this case was started.  The plaintiffs --

2                   THE COURT:  The issue before Judge Wexler.

3                   MR. SOKOLOFF:  Yes.  The plaintiffs' sole

4    evidence of what the Village of Westhampton did to

5    allegedly prevent them from putting up an Eruv is one

6    letter that says nothing.  It doesn't say, you're

7    prohibited from doing so.  It doesn't say, you will be

8    prosecuted if you do so.  It says nothing at all.

9                   So our view, and I expressed this at the

10   beginning of this case, was that essentially, what the

11   plaintiffs want is to come into court and get free

12   legal advice.  And courts don't sit around and issue

13   decisions just because somebody asks a court, is it

14   legal?  There has to be something that was done that

15   creates a controversy.  All the village did was respond

16   to the complaint with defenses and with counterclaims

17   that are now adjudicated.

18                   So what I believe has to happen is one of

19   two things:  Either the plaintiffs can say to

20   themselves, we got the Eruv, it's up, there's no reason

21   for this Court to further adjudicate this matter as to

22   the Village of Westhampton Beach and discontinue their

23   claims against the Village, or the Court should allow

24   me to move on subject matter jurisdiction to dismiss

25   the case.

1          THE COURT:  All right.

2          MR. SOKOLOFF:  So that's where I see this

3  going, and I hope we could do that without getting

4  dragged into discovery.

5          THE COURT:  I understand a lot of this is

6  probably just being tossed around for the first time

7  today, so if you have any immediate response, I'm happy

8  to hear it.

9          MR. SUGARMAN: I do, your Honor.  I frankly

10  don't understand the ripeness argument.  I do

11  understand the all the village did argument and that

12  was the position of the village at the preliminary

13  injunction hearing, but there were no depositions taken

14  before the preliminary injunction hearing.

15          It's the plaintiffs' view that it's not all

16  the village did.  The only way we're going to be able

17  to determine that is to take the depositions of the

18  mayor and the members of the council to see whether the

19  village did more than that, and whether, as a result of

20  that, there is support and substantiation for the other

21  claims that I've enumerated before.

22          So I don't see the justification for an

23  argument that these other claims should be dismissed

24  based on a preliminary injunction hearing which took

25  place before there was any document discovery or

1    deposition discovery.  I just don't understand that.

2              MR. SOKOLOFF:  Can I just respond briefly?

3              THE COURT:  Sure.

4              MR. SOKOLOFF:  It's not a motion to dismiss

5    based upon the preliminary injunction hearing.  It

6    would be a motion to dismiss based on the pleadings, in

7    other words a 12(c) motion.  And the plaintiffs are the

8    ones who have the burden.  According to their claims,

9    they are saying, you prevented us from putting up an

10   Eruv.  Well, when they came in and said, you prevented

11   us from putting up an Eruv, they should know what the

12   village did.

13             They can't come in here and say, you

14   prevented us from putting up an Eruv but we don't know

15   how you prevented us, we don't know what you did to

16   prevent us, we need to take discovery to find out from

17   you because you know what you did but you never alerted

18   us to it.  That's not a claim.

19             THE COURT:  All right.  Go ahead.

20             MR. BUCHWEITZ:  Your Honor, just one point:

21   The Village of Westhampton Beach, on July 6, 2012,

22   withdrew its contention that our complaint should be

23   dismissed on the ground of ripeness and/or lack of

24   justiciability, and that was filed in court.

25             MR. SOKOLOFF:  That is true and I have the

1  stipulation.  However, it was premised upon the

2  plaintiffs' agreement not to put up an Eruv during the

3  pendency of this litigation.  So that's number one.

4  Number two, subject matter jurisdiction cannot be

5  waived.  It can be raised at any point during the

6  litigation, even on appeal.

7           THE COURT:  I think part of what they're

8  raising here is, what is the impact of the stipulation?

9  And there's case law on that but we'll talk about that.

10          Go ahead.

11          MS. WEISGERBER:  Erica Weisgerber for

12  Verizon.

13          Just to be clear, Westhampton's withdrawal

14  of its ripeness and justiciability claims was not

15  premised on Verizon's agreement.  Verizon's agreement

16  to forego putting up the leches was contingent upon

17  Westhampton Beach unequivocally agreeing to withdraw

18  its ripeness and justiciability claims.

19          MR. BUCHWEITZ:  Your Honor, just one more

20  point.  Yehuda Buchweitz, Weil Gotschall.

21          What I heard from Mr. Sokoloff again for the

22  first time -- I wish we would have heard this weeks ago

23  -- about dropping his defenses or his counterclaims.

24  He has no counterclaims in our case, he has

25  counterclaims against Verizon and LIPA.  So it's not

```
1   clear to me what he would be dropping.  But if he's
2   saying that he's willing to enter into a judgment on
3   our declaratory judgment claim that there's no law that
4   prevents the Eruv and agree to a permanent injunction,
5   we'd be happy to hear that.
6            THE COURT:  All right.  We're not going to
7   resolve this here this moment.  Let me go on to round
8   two here with the next case, and I'll tell you what my
9   thoughts are when we conclude that.  That would be
10  Verizon's case.
11           MR. SUGARMAN: With respect to the Eruv
12  Association, you've got Quogue and Southampton.
13           THE COURT:  Yes, my apologies, that's right.
14  We need to get to Quogue, which Mr. Arntsen, I assume
15  is --
16           MR. ARNTSEN:  Yes, that's me, your Honor.
17           THE COURT:  Although you don't look like Ms.
18  DeJong, I assume you're here --
19           MR. ARNTSEN:  I'm here in her stead, your
20  Honor.
21           THE COURT:  Okay.
22           MR. ARNTSEN:  Essentially, the issue of
23  whether you have the jurisdiction to decide the
24  question and the interpretation of the sign ordinance -
25  - the encroachment ordinance rather is the primary
```

```
1    issue that's left to be decided here, at least for the

2    moment.  We believe, as we've argued in the letter

3    briefing process, that you don't --

4              THE COURT:  I don't take any offense at

5    that.

6              MR. ARNTSEN:  Thank you, your Honor.  And

7    you also wrote fairly extensively, I think, in the

8    Southampton decision on that very subject and held that

9    you should not exercise supplemental jurisdiction in

10   that context.  So as far as we're concerned, that's the

11   principal issue that needs resolution before whatever

12   is to proceed actually proceeds.

13             THE COURT:  Okay.  Somebody else I missed

14   here.

15             MS. LICCIONE:  That would be me, your Honor.

16   Good afternoon.  Maureen Liccione, Jaspan Schlesinger.

17             Your Honor, with all due respect, I want to

18   correct some of the statements Mr. Sugarman made in so

19   far as they relate to the Town of Southampton.  Your

20   Honor will recall that the first complaint against the

21   Town of Southampton was dismissed, and that was only

22   after Judge Wexler ruled on the preliminary injunction

23   hearing that the plaintiff was unlikely to succeed

24   against the Town of Southampton.  So when there's a

25   reference to four or five years' worth of litigation, I
```

1    just would ask the Court and the parties to remember

2    that with respect to Southampton.

3            There's a case that I believe is only a year

4    old.  The second complaint, your Honor dismissed a

5    significant portion of that and sent it to state court

6    and stayed the rest of the case.  That case, the

7    Article 78 proceeding, the town is handling as a garden

8    variety variance application, should we make an

9    exception to our sign law.  So our case is relatively

10   new in that regard.

11           But more than that, your Honor, I would

12   submit that moving forward with discovery against

13   Southampton in particular would not be appropriate at

14   this time for a few reasons.  First, it would work to

15   the prejudice of Southampton.  It's not the town's

16   fault, if you will, for lack of a better term, that the

17   plaintiff brought an unripe action against the town.

18   It was unripe because they did not bring a land use

19   application.  It is not the town's fault that rather

20   than pursue an Article 78 proceeding to vacate a garden

21   variety zoning board decision, that the plaintiff chose

22   to come to federal court instead of proceeding with a

23   state court remedy.

24           So I think the town is being prejudiced here

25   by the, if you will and with all due respect, the

1   plaintiffs' choice of inappropriate remedies.  I would

2   add to that, your Honor, that the town spent literally

3   tens of thousands of dollars on document discovery,

4   only to have portions of the case dismissed and a stay

5   issued.

6          The Town of Southampton, I would point out,

7   is much, much larger than the two villages.  It has a

8   very large year-round population.  It has its own

9   police department.  It has innumerable computers and

10  hardware that had to be searched.  The town expended

11  exorbitant amounts of money -- we are not insured -- to

12  only have the case dismissed and then partially

13  dismissed and stayed.

14         Finally, your Honor, and if you'll bear with

15  me, this is the first I heard from plaintiff that they

16  would like to vacate the stay that your Honor issued

17  some months ago.  I don't know what the basis would be

18  to vacate a very long and detailed decision.  Counsel

19  has brought no argument before the Court as to why a

20  stay should be issued.  It hasn't moved to reargue, it

21  hasn't moved to vacate the stay.  Really what plaintiff

22  is saying is because the other two municipality cases

23  have been laying around for a long time, the stay

24  against Southampton should be vacated, and I would

25  certainly strenuously object to that, your Honor.

1    Thank you.

2            THE COURT:  All right.

3            MR. SUGARMAN: Your Honor, may I briefly

4    respond to that?

5            THE COURT:  Sure.

6            MR. SUGARMAN: To call the controversy in

7    Southampton a "garden variety zoning matter" is just a

8    misperception of what this is all about.  This is about

9    the denial of First Amendment religious freedom rights

10   to residents of the Town of Southampton.  To pass it

11   off as a garden variety zoning matter is just a

12   misperception and a mischaracterization of what this is

13   all about.

14           One portion was dismissed and that's the

15   portion that is now in state court, but there are other

16   portions that assert the free exercise claim, the 1983

17   claim, the Rilupa claim and on and on, which the

18   plaintiffs are entitled to have resolved.  The fact

19   that Southampton chose not to be insured and chose to

20   defend against all these claims is their own choice,

21   and it ought not to be at all persuasive for them to

22   come in and plead poverty in effect is what they're

23   doing -- they're a huge town with a huge budget.

24           The plaintiffs have asserted significant

25   constitutional, statutory claims against the Town of

1   Southampton.  Yes, Ms. Liccione is right, this is the

2   first time she's heard of our request to lift the stay

3   but it's the first opportunity that we've had to do it.

4   And to the extent -- and my recollection is that your

5   Honor did have an extensive review and opinion with

6   respect to the dismissal of the one claim but then just

7   stayed all the rest.  I don't recall there being a lot

8   of either briefing or discussion in your opinion of

9   that.

10          So I return to where I started, which is we

11  believe that we should be able to go forward so that

12  we're not into the seventh and eighth years.  Yes,

13  there was a hiatus but the Town of Southampton was here

14  at the beginning.  They produced all of the documents

15  that have been requested.  We've produced all the

16  documents to the Town of Southampton.  So maybe with

17  respect to the Town of Southampton, it's a two-and-a-

18  half-year case as opposed to a four-year case, but it's

19  a distinction without a difference.  Thank you.

20          MS. LICCIONE:  Your Honor, may I be heard

21  very briefly?

22          THE COURT:  Sure.

23          MS. LICCIONE:  Thank you.  Your Honor, if

24  the state court upholds the zoning board's

25  determination to not allow this group to defy its sign

 1    law, as any other applicant would have to do for any

 2    purpose, religious or otherwise, it would seem to me

 3    that this case is over, that there would be nothing to

 4    litigate.  So to put the Town of Southampton through

 5    discovery for a case that could -- either the Supreme

 6    Court of Suffolk County or the Appellate Division

 7    Second Department will put an end to seems to be a

 8    terrible waste of municipal resources.

 9            With respect to my reference to "garden

10    variety," I meant no offense to the plaintiff.  But

11    certainly the issue before Southampton is not before

12    the Southampton Zoning Board of Appeals.  They are

13    separate entities.  The issue before the Zoning Board

14    of Appeals is, can we make an exception to a zoning law

15    for anyone?  That's the issue.  If I'm repeating

16    myself, I'm sorry.  If the Supreme Court or the Second

17    Department says they were within their rights to do so,

18    it seems to me there is no federal case.  Thank you,

19    your Honor.

20            THE COURT:  Let's move on to Verizon's case

21    against the Village of Westhampton Beach, et al.

22            MS. WEISGERBER:  Erica Weisgerber for

23    Verizon again, your Honor.

24            Taking each municipality one at a time, and

25    I believe I likely speak for LIPA as well on most of

1   this but I'll allow Mr. Murdock to --

2           THE COURT:  Can I get you a little bit

3   closer to the microphone?  I'm having trouble hearing

4   you.

5           MS. WEISGERBER:  Sure.  I said, I believe I

6   speak on behalf of both utilities but Mr. Murdock will

7   certainly correct or join in after I'm done.  But with

8   respect to Westhampton Beach first of all, the

9   utility's primary claim against Westhampton Beach

10  regarding the applicability and enforceability of their

11  asserted local ordinances was decided by your Honor's

12  June 16th, 2014 ruling, where the Court ruled that

13  Westhampton Beach had not passed any ordinance that

14  prohibited the attachment of leches to utility poles.

15          With respect to our affirmative claims

16  against Westhampton Beach, the only thing that would

17  remain is declaratory judgment on our affirmative

18  claims against them.  With respect to Westhampton

19  Beach's establishment clause claims, certainly if

20  Westhampton Beach withdraws those claims, they are no

21  longer in the action.  If Westhampton Beach does not

22  withdraw those claims, we believe the issues are

23  squarely covered by the Second Circuit's recent

24  decision.

25          With respect to Westhampton Beach's claims

 1   regarding ripeness and justiciability, which we're just

 2   hearing for the first time today, as mentioned, your

 3   Honor, Westhampton Beach withdrew those claims

 4   unequivocally.  It's document number 56 on the docket

 5   in this action, 11-CV-252.

 6            With respect to Quogue, as mentioned in the

 7   EEEA's case, I believe the primary issue that remains

 8   is whether the Court can determine whether the Quogue

 9   village code applies to the leches in light of the

10   Quogue Board of Trustees' decision, and that's the

11   issue that's currently pending before the Court.  We of

12   course believe that the Court can determine that issue

13   and we believe that the Quogue village code does not

14   apply to the leches.  That issue is also briefed for

15   your Honor already.  We believe that all the issues

16   remaining between the utilities and Quogue are issues

17   of law that can be resolved on the papers and that

18   there would not be remaining issues following that.

19            With respect to Southampton, our claims

20   against Southampton still remain.  Our case actually is

21   more than four years old against Southampton, your

22   Honor.  Our case was simply stayed against Southampton

23   pending resolution or refiling of the EEEA's claims and

24   resolution of the issues pending between the EEEA and

25   Southampton.

1          I believe the utilities do not think we

2    require any further discovery on our claims against

3    Southampton and that those also involve issues of law

4    that can be resolved on the papers.  But at this time,

5    the case remains -- discovery in the case remains

6    stayed.

7               THE COURT:  Okay.

8               MR. MURDOCK:  Good afternoon, your Honor.

9    For LIPA, Zachary Murdock.  I concur with Ms.

10   Weisgerber's presentation.

11              I would take the opportunity to comment that

12   hope does spring eternal.  After the Second Circuit's

13   ruling, which obviated I believe the principle and

14   perhaps the most principled of the municipalities'

15   grounds for opposing the installation of the eruv.  I

16   certainly hope and I continue to hope that for the

17   benefit of taxpayers and rate payers, that there could

18   be a resolution at this point.  If anyone has

19   suggestions along those lines, I'd be happy to

20   entertain them.  Thank you, your Honor.

21              THE COURT:  Thank you.

22              MR. SUGARMAN: May I respond?

23              THE COURT:  Absolutely.

24              MR. SOKOLOFF:  My response to the utilities'

25   presentation is essentially the same as it was to Mr.

1    Sugarman's.  My client is in a different situation than

2    the other two utilities, the other two municipalities.

3              THE COURT:  After a while it all starts

4    sounding the same, so go ahead.

5              MR. SOKOLOFF:  There's an eruv up, or so the

6    plaintiffs say -- there's an eruv up in Williamson

7    today.  The fact that there is federal litigation

8    against a municipality who never said you can't put it

9    up, who never enacted a law that would cover it, yet is

10   sitting here as a defendant in federal litigation,

11   really to me is a farce.

12             It would seem to me that the federal courts

13   have a lot better things to do than to just engage in

14   academic exercises, but that's all this is against my

15   client.  And now that we're here, I defy the plaintiffs

16   to point to anything that Westhampton Beach ever did to

17   prevent them from putting up an eruv.

18             THE COURT:  Well, before we start defying

19   everybody, let me throw this out.  One of the things I

20   really did want to get to today is, in light of the

21   Second Circuit's decisions, is there any hope here at

22   all of trying to resolve these cases without the money

23   it's going to cost everybody to continue litigating

24   them, the fees mounting.

25             We're in the midst of cross-shifting

1    statutes.  We have municipalities on the other end

2    here.  I'm just trying to figure out if -- how should I

3    put this -- calmer minds can ultimately prevail here.

4    Really, I'd like you all to be very candid.  I'm more

5    than happy to try to conduct a settlement conference or

6    get one of my colleagues to conduct a settlement

7    conference here, if the parties are willing to

8    participate in good faith to come to a resolution.

9             There are some things today that were

10   brought up for the first time that I am going to have

11   you talk to each other about before I decide anything

12   further.  But I really would like an answer to this

13   question first.  Is there any prospect of settling

14   these cases?

15             MR. SUGARMAN:  Your Honor, on behalf of the

16   East End Eruv Association, we would welcome the

17   opportunity for your Honor or, in the event that your

18   Honor doesn't think you should do it --

19             THE COURT:  Yes.

20             MR. SUGARMAN:  -- one of your colleagues, to

21   have a round of settlement discussions.  We would

22   approach those in the utmost of good faith, with an

23   attempt to resolve these questions.

24             THE COURT:  Let me switch over to the other

25   side.  Let me work my way back to you.  Let's start at

1  the other end of the table first.

2          MR. ARNTSEN:  Your Honor, I think

3  fundamentally, the question of the validity of the

4  village's encroachment ordinance --

5          THE COURT:  Has to be resolved.

6          MR. ARNSTEN:  -- is very significant to the

7  village.  As the trustees stated in their decision,

8  they across the board prohibit anything to be affixed

9  to these poles for the very reason that the flood gates

10  could be opened once they start.  So the problem we

11  have --

12          THE COURT:  So your clients are concerned

13  for the ramifications of this down the road.

14          MR. ARNSTEN:  Certainly, your Honor, because

15  nobody knows where --

16          THE COURT:  I mean beyond the scope of this

17  case.

18          MR. ARNSTEN:  Yes, I understood you to mean

19  that, yes, your Honor.

20          THE COURT:  Okay.

21          MR. ARNSTEN:  So that's a question that

22  frankly I think needs to be answered and the village

23  believes it should be answered elsewhere than in this

24  federal court.

25          THE COURT:  Okay.

1          MS. LICCIONE:  Your Honor, I would echo Mr.

2     Arnsten's comments, and I think it's even, if I might,

3     it's even a shade stronger for the Town of Southampton.

4     We have a very encompassing sign ordinance that

5     prohibits anything from being put in the public right

6     of way or on the poles, with some limited statutory

7     exceptions.

8               If one thing became clear to me, and I think

9     in the record, in the preliminary injunction hearing

10    and in the discovery that I have reviewed, is that the

11    town -- maybe the word stridently is too strong but the

12    town vigorously enforces this sign ordinance over its

13    500-plus miles of roadway and thousands upon thousands

14    of poles.  The flood gates would open and the town

15    believe that its sign ordinance is at risk and has

16    ramifications far beyond this case.

17              THE COURT:  All right.  You're up.

18              MR. SOKOLOFF:  Well, I came in here with two

19    practical suggestions to save people money.  One is,

20    I'm withdrawing the remaining claim that we had.  And

21    two, I'm urging the plaintiffs to discontinue.  And if

22    they do that, they have the eruv that they seek.  So

23    that's my answer.

24              THE COURT:  All right.

25              MR. SUGARMAN:  Your Honor, two observations.

```
1              THE COURT:  Sure.

2              MR. SUGARMAN:  First, with respect to the

3    Village of Quogue, Judge Wexler denied their request

4    long ago to send us to state court, and I think we've

5    made that argument to your Honor and it's before you.

6    Secondly, I understand the argument that the Town of

7    Southampton and the Village of Quogue can't do anything

8    but in a way, I don't understand it, because the

9    difference between this case and the garden variety

10   cases that my colleagues are talking about is that this

11   case involves constitutional rights.

12             So to the extent that there's a willingness,

13   it would seem to me that there is a way to craft an

14   agreement in this case so as to preserve the positions

15   of the Village of Quogue and the Town of Southampton

16   with respect to the sanctity of their sign laws.  We do

17   have an argument, your Honor, which we will pursue,

18   that those sign laws are not as sacrosanct as counsel

19   is claiming, but that's another view.

20             Far be it from me to advise my colleagues

21   but it seems to me that having been through more than

22   one of these settlement discussions over the years,

23   where principle positions have been taken, people find

24   a way to preserve their principles and still resolve

25   the case.
```

1          THE COURT:  Let me ask you a question along

2    those lines.  Have you ever presented a proposal to the

3    village about the wording -- I'm not asking you to buy

4    this.  I'm just thinking out loud here -- proposal as

5    to the wording of the ordinance that would enable you

6    to live with what's there and allow them to live with

7    what's there?

8          MR. SUGARMAN:  No.  We've never gotten to

9    that discussion back and forth with them about this

10   concern and this issue.

11         MR. BUCHWEITZ:  Your Honor, one thing that

12   could be very clear.  The Town of Southampton's sign

13   law, which of course we think doesn't apply, has a

14   number of exceptions, a number of exceptions.  And it

15   would be very, very simple, if they wanted to, to have

16   an exception for leches.

17         THE COURT:  Okay.  Let me just focus on

18   Quogue for a minute because that's where I am, all

19   right?  As to Quogue -- and what I really don't want to

20   have happen here is that people are spinning their

21   wheels for no good purpose.

22         Mr. Arnsten, obviously, I'm putting you on

23   the spot but I'm doing it anyway.

24         MR. ARNSTEN:  Okay.

25         THE COURT:  Would your clients do you think

```
1   even be open to a suggested proposal with regard to the
2   language?
3              MR. ARNSTEN:  Your Honor --
4              THE COURT:  Understanding that they have the
5   right to say, no, we can't live with this.  I get that.
6              MR. ARNSTEN:  Your Honor, I've been before
7   this Court enough I think for you to know that I very
8   rarely foreclose the opportunity to have a discussion.
9   But that being said, I think the problem with rewording
10  the ordinance -- again, I don't know what the proposal
11  might be -- is that it would invoke precisely the type
12  of constitutional concerns that our ordinance does not
13  give rise to because it's so plainly worded and so
14  across the board prohibitive.  So to tinker with that,
15  in my estimation, would be an invitation for a real
16  problem that again transcends this case.
17             THE COURT:  All right.
18             MR. ARNSTEN:  I would caution them, if they
19  were to engage in a discussion, that they would be
20  really treading on thin ice to try to put wording into
21  this that would somehow craft an exclusion for a
22  religious group when, as it's worded now, as they've
23  already decided themselves, the board, nobody is
24  allowed to do it.  We avoid these questions because of
25  that.
```

```
1              THE COURT:  All right.  Look, you certainly

2    have been before me often enough that I know you speak

3    with candor and you're very straightforward in your

4    responses.

5              MR. ARNSTEN:  Thank you, your Honor.

6              THE COURT:  So I've no reason to doubt what

7    you're telling me.  What I don't want to have happen is

8    that the plaintiffs are put to the additional work of

9    putting some kind of proposal together and then it's

10   pretty clear there's virtually no circumstance under

11   which the town or the village, excuse me, could adopt

12   it.  So if that's the case and that's candidly what

13   you're telling me, which it sure sounds like what

14   you're telling me, then I'm not going to put them

15   through that exercise for nothing.

16             MR. ARNSTEN:  I think I would adopt your

17   Honor's phrasing that there's virtually no chance.

18             THE COURT:  Okay.  I have no doubt, based on

19   what I've heard already, that that carries over to

20   Southampton.

21             MS. LICCIONE:  Yes, your Honor, and if I

22   might just comment briefly.  I apologize for laughing a

23   little bit but the notion that a local law can easily

24   be tinkered with by the waiving of a magic wand kind of

25   bespeaks a -- I don't really know the word but a lack
```

 1    of knowledge about the way municipal law works.  A

 2    local law has to be noticed and a hearing held.  We

 3    cannot enter into a stipulation saying that we will

 4    pass a law.  A law has to go through its natural

 5    processes for due process, among other purposes.

 6              THE COURT:  All right.

 7              MS. LICCIONE:  So I would just add that to

 8    the mix.

 9              THE COURT:  Look, one of the things I've

10    learned, not only as a mediator before I took the bench

11    but certainly in my experiences trying to do

12    alternative dispute resolution since I've been on the

13    bench -- and I do these sessions some weeks every

14    single day.  I can't bring somebody into a settlement

15    discussion where it's pretty clear to me the parties

16    feel constrained that no matter what's offered, they're

17    not going to come to a resolution.  So I'm not going to

18    do that.

19              What I will proceed to do, and I'm

20    restricting this for the moment, but as to Quogue and

21    ask to Southampton, I will proceed to do what I have to

22    do on the pending motions at this point.

23              As to Westhampton Beach, Mr. Sokoloff

24    brought up a couple of interesting topics and

25    suggestions today.  And I know that for the plaintiffs,

1    it's the first time they've heard this.  And what I

2    would like is for you folks to at least talk further.

3    I'll give you an opportunity to discuss this before I

4    take any further action with regard to the Village of

5    Westhampton Beach.

6              So what I would propose at this point is

7    that you folks -- I'd really like to make sure you

8    carve out time for this because this is not a

9    conversation you're going to have in five minutes.  I'm

10   going to give you the next three weeks to talk to each

11   other about some of the issues that Mr. Sokoloff raised

12   today, some of the issues that you've raised today, and

13   to find out, is there a way to settle all of this, part

14   of this or none of this, as to the Village of

15   Westhampton Beach.

16             I want you to report back to me at the end

17   of that three-week period.  If the answer is, we can't

18   get to a meeting of the minds, then the alternative and

19   what I do want you to do at that point is to provide me

20   with a list, please no longer than two pages, of what

21   you perceive still has to be done in this case.

22             I know you're going to be asking for some

23   discovery and for me to lift certain stays I put in

24   place with regard to discovery.  I just want a list of

25   the things you believe the Court has to address at that

point, and I want to get those resolved expeditiously,
all right.  I really do want to get these cases back on
track and move them forward, so we're not sitting
around here next year saying, now we're in the sixth
year, et cetera.  That doesn't behoove any of us.

Now these cases have all been officially
reported to Washington as being older than three years
old, so it shows up on all my cases over three years
old.  So I have my own incentive for trying to get a
resolution here in the end as well.

I appreciate everybody's candor today and in
so many cases like this, not that any of them are
identical by any means, but there are emotional issues
in addition to the legal issues on every side of these
cases.  Sometimes it leads us to places that we might
not otherwise go, just in terms of responding to
things.  But what I'm saying to you is, we are going to
get a resolution here of each of these cases, one way
or the other, and I really do want to focus on getting
things back on track here.

I'm not looking for anything in writing from
Southampton or from Westhampton Beach based on what I
just told you.

MR. SOKOLOFF:  Quogue.

THE COURT:  Quogue, excuse me, based on what

1   I just told you.

2          MR. ARNSTEN:  Thank you, your Honor.

3          THE COURT:  Did you want to say something,

4   counsel?

5          MS. LICCIONE:  Yes, your Honor, if I may.

6   It's my understanding that my case is stayed pending a

7   decision from the state court.  So in terms of getting

8   the case back on track, I just want to clarify that

9   there's really nothing to get back on track at this

10  point.

11         THE COURT:  Unless you get something from me

12  that says the stay is removed as to Southampton, you

13  are in your same status.

14         MS. LICCIONE:  Your Honor, I would expect

15  that that would only happen if there were a formal

16  application to vacate your existing order.

17         THE COURT:  Yes.  Well, I don't know what's

18  going to come to me in three weeks.  So without giving

19  any advisory opinions here, I have to wait and see what

20  I get.

21         MS. LICCIONE:  Thank you, your Honor.  I

22  appreciate that.

23         MR. SUGARMAN:  Thank you, your Honor.

24         THE COURT:  Anything else we need to address

25  today?  All right.  Have a good evening.  Thank you

1   all.

2           MR. SUGARMAN:   Thank you, your Honor.

3           MR. SOKOLOFF:   Thank you.

4                   *  *  *  *  *  *  *  *  *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18         I certify that the foregoing is a correct

19   transcript from the electronic sound recording of the

20   proceedings in the above-entitled matter.

21

22

23

24

25   ELIZABETH BARRON                    March 17, 2015